SABO v MONROE TOWNSHIP

Opinion of the Court

1. Zoning—Ordinances—Appeal and Error.

The task of the Court of Appeals upon review of zoning cases is to determine whether the challenged ordinance bears a reasonable and substantial relationship to the preservation of the public health, safety, morals, and general welfare of the community.

2. Zoning—Ordinances—Appeal and Error.

The general principles governing the determination by the Court of Appeals of the reasonableness of a challenged zoning ordinance are: (1) the ordinance is presumed valid, (2) the party challenging the ordinance has the burden of proving the ordinance is unreasonable, (3) a master plan adopted in compliance with statutory requirements is evidence of the ordinance's reasonableness, (4) the ordinance must not be arbitrary, unreasonable, or discriminatory in its impact upon the subject property, (5) the lower court decision receives *de novo* review, and (6) the trial judge's decision is accorded great weight.

3. Zoning—Ordinances—Reasonableness—Confiscation—Burden of Proof.

A plaintiff challenging the reasonableness of defendant's zoning ordinance submitted sufficient evidence to sustain his burden of proof where the record disclosed persuasive evidence that plaintiff's property was so devoid of feasibility for use as zoned that the ordinance was confiscatory.

4. Zoning—Ordinances—Confiscation.

A zoning ordinance permitting use only for agricultural and single and multiple residential development was deemed confiscatory where the high cost of removing obstacles on the property, alleviating drainage problems, and employing a sewage

References for Points in Headnotes
[1, 2, 5, 6] 58 Am Jur, Zoning § 14 *et seq.*
[3, 4, 7] 58 Am Jur, Zoning § 140.
[8] 5 Am Jur 2d, Appeal and Error § 896.

lift pump precluded use of plaintiff's property for agricultural purposes, and where construction difficulties created by surrounding uses for the development of residences and a nonexistent market for the construction of multiple units indicated that the subject parcel was unsuitable for the uses permitted by the ordinance.

5. Zᴏɴɪɴɢ—Oʀᴅɪɴᴀɴᴄᴇs—Rᴇᴀsᴏɴᴀʙʟᴇɴᴇss.

Reasonableness of a landowner's proposed use of his land for a mobile home park was supported by the proofs where the proffered evidence established (1) a shortage of low-income housing in defendant township, (2) the compatibility of the proposed use with surrounding uses, and (3) the beneficial effect of the proposed use upon the public health, safety, and general welfare of the community.

6. Zᴏɴɪɴɢ—Oʀᴅɪɴᴀɴᴄᴇs—Tʀᴀɪʟᴇʀ Cᴏᴀᴄʜ Pᴀʀᴋ Aᴄᴛ—Rᴇsᴛʀɪᴄᴛɪᴏɴs— Pʀᴇᴇᴍᴘᴛɪᴏɴ.

A township has the right to impose greater restrictions to protect the health, safety, and welfare of its community than those contained in the Trailer Coach Park Act since the act, when read together with the township rural zoning act, creates only minimum standards and does not preempt ordinances supplementing those standards; therefore, a defendant township's argument to rebut the reasonableness of a plaintiff's requested mobile-home-park use by contending that it was not permitted to impose greater restrictions than the act to guarantee adequate street size for snow removal, fire protection, and emergencies was without merit (MCLA 125.271 *et seq.,* 125.1001 *et seq.).*

CONCURRENCE BY O'HARA, J.

7. Zᴏɴɪɴɢ—Oʀᴅɪɴᴀɴᴄᴇs—Cᴏɴғɪsᴄᴀᴛɪᴏɴ.

*A defendant township should be directed to grant a plaintiff's petition to have plaintiff's property rezoned to permit the erecting of a mobile home park where the application of the defendant's zoning ordinance to plaintiff's property and the consequent limit of use thereunder amounts in legal effect to confiscation.*

8. Aᴘᴘᴇᴀʟ ᴀɴᴅ Eʀʀᴏʀ—Issᴜᴇs Rᴀɪsᴇᴅ—Oʀᴀʟ Aʀɢᴜᴍᴇɴᴛ.

*The fact that an issue was adverted to upon oral argument in the Court of Appeals, but not raised below, nor as an assignment of error by appellant, nor defensively by appellee, is insufficient to put the question before the Court of Appeals for decision.*

Appeal from Monroe, Robert W. McIntyre, J. Submitted Division 2 October 11, 1972, at Detroit. (Docket No. 12799.) Decided April 23, 1973. Leave to appeal granted, 390 Mich 764.

Complaint by Arthur E. Sabo, Clarence R. Petree, and David Phipps against Monroe Township challenging the reasonableness of defendant's zoning ordinance as applied to plaintiffs' property. Complaint dismissed. Plaintiffs appeal. Reversed and remanded for further proceedings.

*John J. Sullivan,* for plaintiffs.

*Harry A. Lockwood,* for defendant.

Before: V. J. BRENNAN, P. J., and BRONSON and O'HARA,* JJ.

BRONSON, J. Plaintiffs are the owners of a 71-acre tract of land zoned for multiple residential use which is located in the Township of Monroe. Plaintiffs sought to have their property rezoned to commercial for the construction of a mobile home park. Defendant denied their petition and suit was instituted in the Monroe County Circuit Court challenging the reasonableness of the zoning ordinance as applied to plaintiffs' property. From the trial court's dismissal of their complaint, plaintiffs appeal as a matter of right.

Plaintiffs are the land contract purchasers of the 71-acre tract and option holders on an adjacent 14 acres. Upon this 85-acre parcel, plaintiffs intended to construct a mobile home park. Defendant township permitted such developments only in areas

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

zoned C-1, commercial.[1] Since the subject parcel was zoned RB, multiple residential, permitting use for agricultural, single, and multiple development, plaintiffs initially petitioned defendant on August 19, 1969 for the necessary rezoning to commercial. Preliminary consideration by both the township board and the county planning commission was favorable. On September 21, 1970, the township board reaffirmed their tentative approval conditioned upon the necessary ordinance being drafted by the township attorney and submitted to the board for formal approval at a public meeting. The public meeting was held on October 19, 1970, at which 60 to 70 community residents of the 8,000 to 9,000 population objected to the establishment of the proposed mobile home park. The township board refused to approve the necessary resolution for the zoning change and plaintiffs filed suit in Monroe County Circuit Court.

At trial plaintiffs offered evidence that the uses permitted in the vicinity of the subject parcel included a stone quarry, an automobile salvage yard, single-family residences, two-family residences, offices and commercial uses, public and quasi-public uses and vacant land, much of which was used for agricultural purposes. Defendant neither had developed a master plan for the community nor consulted professional planners. Plaintiffs' evidence challenging the feasibility of the uses permitted by the RB classification revealed that (1) the stone level made construction of sewer and water lines for single and multiple units impracticable, (2) the vibrations caused by blasting at the

---

[1] We question the propriety of defendant's attempt to restrict the development of mobile home parks, a legitimate residential use, to commercial zones. *See, e.g., Bristow v Woodhaven,* 35 Mich App 205, 220 (1971) (where the Court in footnote 9 adopted the trial court's discussion regarding the detrimental and discriminatory effect of placing mobile home parks in a commercial zone).

stone quarry adversely affected such construction, and (3) there was no market for the construction of multiple units upon the subject parcel. By way of comparison, evidence was offered that the same construction problems were not applicable to mobile home development since the mobile homes' flexible construction could withstand the vibration and both the sewer and water lines could be placed on the surface.

Plaintiffs supplemented the reasonableness of their requested use by evidence that the density would be the same whether developed for single units or for mobile homes and mobile home development was controlled by stricter housing codes. Significantly, evidence was submitted establishing a need for low-income housing of 2,000 to 3,000 units which plaintiffs' proposed project would help alleviate. Although the township contained two mobile home sites, one of which was being expanded, there were waiting lists for entrance into each. A planning consultant, offered by plaintiffs, testified that good planning techniques included the establishment of buffer zones between differing uses. This witness opined that the proposed development would provide such a buffer between the adjacent junkyard and surrounding single dwelling subdivisions. Based upon this evidence several expert witnesses concluded that the requested zoning would not have an adverse effect upon the public health, safety, and general welfare of the community.

Defendant attempted to rebut plaintiffs' proofs by testimony that the subject property was suitable for farming. However, defendant's witness admitted that it would be necessary to remove the trees, spend $200 per acre to alleviate the drainage problem by tiling the field and employ a

sewage lift pump because of the high rock level before the property could be farmed. The township supervisor testified that two mobile home parks existed in the township, other areas were more suitable for mobile homes, and viewed plaintiffs' request as spot zoning. This witness also opposed the requested development since it would prevent the normal construction of streets as in subdivisions and create problems for the schools. The planning consultant offered by defendant testified that plaintiffs' proposed use would disrupt the township's future growth because of an increase in density and adverse effect upon adjoining property. This witness opined that the mobile home project *might* have an adverse effect upon the welfare of the community.

At the conclusion of trial, the trial judge by written opinion dismissed plaintiffs' complaint for failure to sustain their burden of proof. From this adverse decision plaintiffs appeal challenging the reasonableness of defendant's zoning ordinance.

Our task upon review of zoning cases is to determine whether the challenged ordinance bears a reasonable and substantial relationship to the preservation of the public health, safety, morals, and general welfare of the community. The general principles governing this determination are as follows: (1) the zoning ordinance is presumed valid, (2) plaintiff has the burden of proving the ordinance is unreasonable, (3) a master plan adopted in compliance with statutory requirements is evidence of the ordinance's reasonableness, (4) the ordinances must not be arbitrary, unreasonable, or discriminatory in its impact upon the subject property, (5) the lower court decision receives *de novo* review, and (6) the trial judge's decision is accorded great weight. *Hitchman v Oakland Twp,*

329 Mich 331 (1951); *Gust v Canton Twp,* 342 Mich 436 (1955); *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425 (1957); *Spanich v Livonia,* 355 Mich 252 (1959); *Biske v City of Troy,* 381 Mich 611 (1969); *Pederson v Harrison Twp,* 21 Mich App 535 (1970).

The record discloses persuasive evidence that the high cost of removing obstacles on the property, alleviating drainage problems, and employing a sewage lift pump precluded the use of plaintiffs' property for agricultural purposes. Likewise, the construction difficulties created by the surrounding uses for the development of either single or multiple residences and nonexistent market for the construction of multiple units indicates that the subject parcel is unsuitable for either of the remaining uses permitted by defendant's ordinance. Upon these facts the property is so devoid of feasibility for use as zoned that the ordinance is deemed confiscatory. *North Muskegon v Miller,* 249 Mich 52 (1929); *Fenner v Muskegon,* 331 Mich 732 (1951); *Spanich v Livonia, supra; Pederson v Harrison Twp, supra; Reibel v City of Birmingham,* 23 Mich App 732 (1970). Applying the cited traditional zoning principles,[2] we conclude that plaintiffs submitted sufficient evidence to sustain their burden of proof.

The reasonableness of plaintiffs' proposed use is supported by the proofs. The proffered evidence established (1) a shortage of low-income housing in Monroe Township, (2) the compatibility of the proposed use with surrounding uses, and (3) the beneficial effect of the proposed use upon the public health, safety, and general welfare of the community.

---

[2] Since the submitted evidence conclusively establishes the unreasonableness of defendant's zoning ordinance as applied to plaintiffs' property, it is unnecessary for this Court to resort to the "preferred" use doctrine of *Bristow v Woodhaven,* 35 Mich App 205 (1971), and its progeny.

Upon oral argument defendant attempted to rebut the reasonableness of plaintiffs' requested use by contending that the size of the streets provided in the proposed site plan were inadequate for public health, safety, and welfare. Defendant contended that it was not permitted to guarantee adequate street size for snow removal, fire protection, and emergencies by imposing restrictions greater than those contained in the Trailer Coach Park Act of 1959 (hereinafter trailer park act).[3] We dispose of this secondary issue by holding that defendant has the right to impose greater restrictions to protect the health, safety, and welfare of its community for the following reasons.

The township rural zoning act,[4] which provides the township board with their zoning power, specifically includes mobile homes:

" * * * For each such district, provisions may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings and structures that may hereafter be erected or altered, including tents and *trailer coaches,* and the specific uses for which dwellings, buildings and structures including tents and *trailer coaches* may hereafter be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety and protective measures that shall be required for such dwellings, buildings and structures, including tents and *trailer coaches;* and the maximum number of families which may be housed in buildings, dwellings and structures including tents and *trailer coaches* hereafter erected or altered. * * * " MCLA 125.271; MSA 5.2963(1). (Emphasis added.)

The trailer park act passed by the Legislature in 1959 similarly controls the development of trailer parks by establishing certain standards and re-

---

[3] MCLA 125.1001 *et seq.;* MSA 5.278(31) *et seq.*

[4] MCLA 125.271 *et seq.;* MSA 5.2963(1) *et seq.*

quirements. We do not view these two statutes as inconsistent. Their provisions may be reconciled.

Section 54 of the trailer park act provides:

"Each individual trailer coach site shall abut or face on a clear unoccupied space, driveway, roadway or *street of no less than 20 feet in width,* which shall have unobstructed access to a public highway or alley. Existing licensed parks having driveways, roadways, or streets less than 20 feet in width shall not be required to increase the same to *the 20 foot minimum road width* as long as the park is not redesigned or added to. * * * " MCLA 125.1054; MSA 5.278(84). (Emphasis added.)

This language clearly prohibits the construction of streets less than 20 feet wide, but what of a street in excess of 20 feet wide? Can a township impose restrictions upon developers in excess of the standards established by the trailer park act?

We answer this question by determining whether the trailer park act preempts a local community's zoning authority to control development by the imposition of *maximum* standards. The language of the provisions throughout the trailer park act seems to indicate that the standards are bare minimums. The language of § 54 incorporating phrases such as "no less than" or "the 20 foot minimum" justifies an interpretation that the regulation was intended to create a *minimum* standard. This conclusion is supported by additional provisions creating standards modified by such phrases as "no less than" or "at least".[5]

A reading of the trailer park act in this manner preserves the integrity of both the local zoning

[5] *See* MCLA 125.1053; MSA 5.278(83), MCLA 125.1060; MSA 5.278(90), MCLA 125.1061; MSA 5.278(91), MCLA 125.1062; MSA 5.278(92), MCLA 125.1065; MSA 5.278(95), MCLA 125.1067; MSA 5.278(97).

authorities' attempts to protect the health, safety, and welfare of their communities and the state health commissioner's enforcement of the act. The recognition that local zoning ordinances may be reconciled with provisions of the trailer park act is specifically found in § 16, which provides:

> "*Nothing* in this act nor any act of the commissioner *shall relieve the applicant* for a permit to construct a trailer coach park *or relieve the person owning or operating* an existing park *from responsibility for* securing any building permits or *complying with all applicable codes, regulations or ordinances not in conflict with this act.* Compliance with an approved plan shall not authorize the person constructing or operating a trailer coach park to create or maintain a nuisance or a hazard to health or safety." MCLA 125.1016; MSA 5.278(46). (Emphasis added.)

This language not only recognizes the existence of additional local ordinances controlling the construction of mobile home communities, but their propriety when not in conflict with the trailer park act.

If the trailer park act is found to create *maximum* standards, then local zoning authorities will be effectively barred from regulating mobile home developments since any ordinance would conflict with the act. By definition any local ordinance in excess of the statutory maximum would be in conflict and held void. Similarly, any local ordinance permitting standards for development less than the statutorily imposed standards would be held void. This is the lesson of *Richards v Pontiac,* 305 Mich 666 (1943), in which attempts to avoid the effect of the predecessor of the trailer park act by lesser standards was rejected. The *Richards* Court concluded that the statute's purpose was "to take over the entire field of regulation of trailer

parks in the state". This language justifying the application of the doctrine of preemption should not be divorced from the facts of the case. The effectiveness of the trailer park act would be destroyed if it did not preempt ordinances containing lesser standards which fail to provide residents with the intended protection of the act. In this context, any ordinance in excess of or less than the statutory standards would create a conflict and the language of § 16 would be devoid of meaning.

The alternative approach of finding *minimum* standards created by the trailer park act gives meaning to § 16 and comports with reality. In this case, *Richards* and its progeny continue to preserve the integrity of the trailer park act by preempting inadequate local ordinances which attempt to avoid its effect. This is consistent with the concept of a *minimum* standard. Contrariwise, the *minimum* standard would not prohibit the local authorities from imposing higher requirements upon developers when reasonable and necessary to protect the public health, safety, and welfare. This type of supplementary enforcement of the trailer park act is consistent not only with the language of the act but its underlying purpose.

Local zoning authorities are entrusted with the power to protect their communities. *Bristow v Woodhaven,* 35 Mich App 205 (1971), requires this protection to be extended to the surrounding community, thus imposing a critical burden upon local authorities. Their attempt to prevent the establishment of new ghettos and to improve the quality of life for the occupants of mobile homes by the imposition of higher standards upon developers when needed should be permitted. A review of the meager requirements imposed by the trailer park act leads us to the conclusion that they can only

be considered minimum standards. Local ordinances reasonably supplementing the standards of this act to protect the public welfare cannot, in our view, be deemed inconsistent with or preempted by the trailer park act. For this reason we cannot agree with the contrary decision of *Fye v Bouma,* 38 Mich App 667 (1972), decided by a previous panel. Monroe Township may require wider streets in the proposed development, if necessary, to protect the public health, safety, and welfare. We, therefore, reject defendant's allegation that the requested rezoning is unreasonable.

Upon the facts presented plaintiffs have sustained their affirmative burden of establishing the unreasonableness of the challenged zoning ordinance. The Trailer Coach Park Act creates minimum standards which may be supplemented by the imposition of reasonable additional requirements by local zoning authorities, if necessary, to protect the public health, safety, and general welfare. Defendant's attempt to rebut the reasonableness of plaintiffs' proposed use by contending that the Trailer Coach Park Act denies defendant the power to impose additional restrictions upon plaintiffs' use, if necessary and reasonable, is unavailing. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded. Costs to plaintiffs.

V. J. BRENNAN, P. J., concurred.

O'HARA, J. *(concurring in result).* I concur in the result reached by Judge BRONSON for his stated reason that upon the basis of the total record the application of the ordinance to plaintiffs' property and the consequent limit of use thereunder amounts in legal effect to confiscation.

I regret I must decline to pass upon the question

of whether the trailer park act[1] and the township rural zoning act[2] read together or individually prohibit the establishment of greater restrictions than contained in the statutes.

The issue was not raised below, hence, the trial judge could not pass upon it. It was not raised as an assignment of error by appellants. It was not raised defensively by appellee.

The fact that it was adverted to upon oral argument is insufficient to put the question before us decisionally. On a question of such moment we need an initial holding by the trial judge, adequate briefing, and perhaps intervention by the Attorney General. My vote is to reverse with directions to the township to grant appellants' petition to erect a mobile home park in conformance with all valid existing requirements.

---

[1] MCLA 125.1001, *et seq.;* MSA 5.278(31) *et seq.*

[2] MCLA 125.271, *et seq.;* MSA 5.2963(1) *et seq.*