WILKINS v VILLAGE OF BIRCH RUN

1. ZONING—ORDINANCES—PRESUMPTIONS—PREFERRED USE—BURDEN OF GOING FORWARD.

   The presumption in favor of a zoning ordinance in a suit challenging the validity of the ordinance is terminated where a proposed use has acquired a preferred status, and the burden of going forward with the evidence on the issue of validity shifts to the governmental unit.

2. ZONING—ORDINANCES—PREFERRED USE—BURDEN OF GOING FORWARD—BURDEN OF PROOF.

   The preferred or favored use doctrine does not abrogate the rule that the plaintiff in a suit challenging the validity of a zoning ordinance has the burden of proof; it merely shifts the burden of going forward with the evidence to the governmental unit.

3. ZONING—APPEAL AND ERROR.

   The review of evidence in zoning cases is made *de novo,* and while due consideration is given to the findings of the trial judge, it is the duty of the reviewing court to weigh the evidence and reach an independent conclusion.

4. ZONING—ORDINANCES—TRAILER PARKS—REASONABLENESS.

   The trial court erred in ruling that a defendant village was unreasonable in denying plaintiffs' request to have their optioned property rezoned to permit the construction of a mobile home park where the zoning restrictions of the village did not totally exclude mobile home parks, directly or indirectly, the refusal to rezone was consistent with a master plan for village development, and where testimony indicated that the village

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning § 223.
   Construction and application of provisions for variations in application of zoning regulations and special exceptions thereto. 168 ALR 13.
[3] 58 Am Jur, Zoning § 229.
[4] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps §§ 13, 14.
   58 Am Jur, Zoning § 63.

council was properly concerned about the resources of the village in light of its projected growth rate coupled with a concern about the quality of life that would exist in the village in the future; plaintiffs did not meet their burden of proof to justify rezoning.

Appeal from Saginaw, Fred J. Borchard, J. Submitted Division 3 March 3, 1973, at Lansing. (Docket No. 13975.) Decided June 26, 1973.

Complaint by Dorwin T. Wilkins and Geraldine L. Wilkins against the Village of Birch Run and others challenging the validity of a zoning ordinance and to restrain defendants from enforcing the zoning ordinance. Judgment for plaintiffs. Defendants appeal. Reversed.

*McTaggart, Hermann, Folen & Hamilton,* for plaintiffs.

*Mellinger & Mahlberg,* for defendants.

Before: DANHOF, P. J., and HOLBROOK and BASHARA, JJ.

HOLBROOK, J. Plaintiffs are optionees of approximately 80 acres of real estate located within the Village of Birch Run and presently leased for agricultural purposes by the owner. The land was formerly zoned "agricultural", but is now for the most part zoned "R-1A", for single-family residential uses by right. Approximately 12 acres of the land are zoned "R-2", for two-family residential uses. Plaintiffs want to build a mobile home park on the optioned land, but such parks are not allowed either by right or permit in districts zoned "R-1A". They are allowed by permit in "R-2" districts and apparently also in "B-1" and "B-2" commercial districts by permit, assuming all the

applicable lot specifications and restrictions, etc.,
are satisfied. After obtaining their option to pur-
chase in September of 1969 plaintiffs sought to
have the acreage then zoned "R-1A" rezoned to
"R-2" so that they could build their proposed 454-
unit mobile home park. At that time the Village of
Birch Run was engaged in a land-use study to
provide a plan for the future growth of the village,
so action on plaintiffs' proposal was delayed until
after a master plan for the proper development of
the village was adopted. A new zoning ordinance
was passed on June 22, 1970, consistent with the
master plan. The old ordinance made no provision
for the development of mobile home parks. A
public hearing was held on plaintiffs' original
proposal in September 1970 and after consultatoin
with the Saginaw County Metropolitan Planning
Staff, the village council denied the petition. Sub-
sequently, plaintiffs requested that only 53 acres of
the property be rezoned, this time for a 225-unit
mobile home park. After another public hearing
and more consultation with the Saginaw County
Metropolitan Planning Staff, plaintiffs' new pro-
posal was denied. Plaintiffs then sought an order
in the circuit court declaring the village zoning
ordinance invalid as it applied to plaintiffs' op-
tioned land. The circuit court judge found for
plaintiffs and ordered that the land be rezoned "R-
2". From that order defendants appeal.

For our purposes it is necessary to quote a
portion of the trial judge's written opinion:

"The court further finds that the existing ordinance
does have provisions for mobile home parks but has in
practical effect excluded same because no location is
suitable for such a development.

"There is an extremely limited demand for this prop-
erty as presently zoned in that the village issued only

four building permits for conventional housing in the first eight months of 1971.

"The court finds that the Village of Birch Run has adopted a Comprehensive Master Plan. *That the property as presently zoned is incapable of generating sufficient income to pay the real property taxes.* Further, that a portion of the proposed development is presently zoned R-2 under the Birch Run ordinance.

"Contrary to the normal rule in zoning cases, where mobile home parks are concerned, the burden is upon the municipality to show an overriding detriment to the local community when compared with the benefit afforded the greater community, *Bristow v City of Woodhaven,* 35 Mich App 205 [192 NW2d 322] (1971). The municipality must carry the proofs. Mobile homes are a recognized form of residential housing and awarded a preferred status by the Legislature and the courts, *Gust v Canton Twp,* 342 Mich 436 [70 NW2d 772] (1955) and *Smith v Plymouth Twp Bldg Inspector,* 346 Mich 57 [77 NW2d 332] (1956).

"It is arbitrary and unreasonable to exclude mobile home parks from undeveloped areas. There cannot be any detrimental effect upon public health, safety, morals or welfare in such locations, *Gust, infra,* and *Edwards v Montrose Twp,* 18 Mich App 569 [171 NW2d 555] (1969). The overrestrictive zoning on this parcel amounts to a confiscation of the property and cannot be condoned, *Pederson v Harrison Twp,* 21 Mich App 535 [175 NW2d 817] (1970).

"The fact that the village has a Comprehensive Master Plan is of some consequence. It is apparent that they are concerned about their zoning and planning for the future. Their efforts are laudable. However, both planning experts testified that the plan is intended to have a degree of flexibility and this has been recognized by the courts, *Bristow* (p 219, last paragraph [192 NW2d at 329]). There is merit to the defendants' argument that too rapid growth may be detrimental to the general welfare of the community. The court does take cognizance of this situation in the relief it grants.

"The question as to the adequacy of sewer and water facilities is really moot in this case. It is not for the

court, but rather the State of Michigan, Department of Health, to determine pursuant to MSA 5.278(85) and (87) [MCLA 125.1055 and 125.1057]." (Emphasis supplied.)

We disagree with the trial judge's findings and therefore must reverse.

Normally, a zoning ordinance is presumed valid, and the burden is on the attacking party to show by competent evidence the lack of a substantial relationship between the restriction of the ordinance and the public health, safety, or general welfare of the community. *Patchak v Lansing Twp,* 361 Mich 489; 105 NW2d 406 (1960). However, certain uses of land have come to be recognized as bearing a real, substantial, and beneficial relationship to the public health, safety, and welfare of the community so as to be afforded a preferred status. *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971); *Congregation Dovid Ben Nuchim v Oak Park,* 40 Mich App 698; 199 NW2d 557 (1972); *Simmons v Royal Oak,* 38 Mich App 496; 196 NW2d 811 (1972). In *Bristow* it was held that mobile home parks were preferred or favored uses, and in subsequent cases that idea became fairly well accepted. *George v Harrison Twp,* 44 Mich App 357; 205 NW2d 254 (1973); *Johnson v Lyon Twp,* 45 Mich App 491; 206 NW2d 761 (1973); *Smookler v Wheatfield Twp,* 46 Mich App 162; 207 NW2d 464 (1973); *Binkowski v Shelby Twp,* 46 Mich App 443; 208 NW2d 243 (1973). Where a proposed use has acquired a preferred status, the presumption in favor of the restriction is terminated, and the *burden of going forward* with the evidence on the issue of the validity of a given zoning ordinance shifts to the governmental unit. *Johnson, supra; Binkowski,*

*supra. Binkowski,* 46 Mich App at 462; 208 NW2d at 248–249, states the correct interpretation:

"[A]lthough the burden of going forward with the evidence at this point shifts to the defendant municipality, the burden of proof remains with the plaintiff. The practical effect of this distinction is that, should the municipality produce sufficient evidence to leave the state of the proofs, in the opinion of the trier of fact, in equipoise, then it is the plaintiff whose cause is defeated. Stated this way, the burden of proof is, in effect, a risk of nonpersuasion. And in zoning cases, indeed as is the case in any litigation, it is the plaintiff who bears the risk of nonpersuasion, he is the party who loses should the trier of fact not be persuaded."

Our analysis of the findings below, coupled with the trial judge's statement that "[t]he municipality must *carry* the proofs" convinces us that the burden of going forward with the evidence was viewed as a burden of proof by the court below. This was erroneous. At this point the basic rule should be reiterated that a zoning ordinance:

"[C]omes to us clothed with every presumption of validity, *Hammond v B H Bldg Inspector,* 331 Mich 551 [50 NW2d 155] (1951), and it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. *Janesick v Detroit,* 337 Mich 549 [60 NW2d 452] (1953). This is not to say, of course, that a local body may with impunity abrogate constitutional restraints. *The point is that we require more than a debatable question.* We require more than a fair difference of opinion. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness. Such cases have in fact occurred *(e. g., Bassey v Huntington Woods,* 344 Mich 701, 705–706 [74 NW2d 897, 899–900] (1956), where a lot zoned 'residential' was subject as such to side-line restrictions leaving only a 4-foot width

to accommodate a 2-family dwelling) but they must in their very nature be extreme and the rule thus stated cannot justify the great numbers of cases reaching this Court." (Emphasis supplied.) *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 432; 86 NW2d 166, 170 (1957).

The preferred or favored use doctrine does not abrogate this rule; it merely shifts the *burden of going forward* with the evidence to the governmental unit. *Binkowski, supra.*

Our review of the evidence in zoning cases is made *de novo.* "While we give due consideration to the findings of the trial judge, nonetheless it is our duty to weigh the evidence and reach an independent conclusion." *Hitchman v Oakland Twp,* 329 Mich 331, 335–336; 45 NW2d 306, 309 (1951). *Bristow, supra,* 35 Mich App at pp 219–220; 192 NW2d at p 329, provides further review guidelines in situations such as these here:

"Once a use is shown to be *prima facie* related to the public health, safety, or general welfare, the task of justifying local restrictions or prohibitions is not and should not be viewed as an impossible one for the municipality. The lack of need for the proposed use or the overabundance of similar, existing uses are matters for consideration. Where a particular parcel is involved, a showing of predesignated and available sites better suited could bear on the reasonableness of restrictions as to given property. *Such a showing would, however, seriously depend on the existence of a carefully prepared, well-reasoned, properly adopted, and flexible master plan which would carry special weight only where noticeably implemented.* In this regard, particular care should be taken that an unwanted and yet necessary use is not being 'pushed off' onto a neighboring community where it may be equally unwanted. Each factor must be considered in its proper perspective. Traffic patterns are valid local interests of greater concern than aesthetics or economic uniformity. The combinations of factors are unlimited and each case

must finally be decided on its peculiar factual setting."
(Emphasis supplied.)

Analyzing the evidence adduced below we find,
contrary to the ruling of the trial judge, that the
practical effect of the zoning restrictions of the
Village of Birch Run is *not* to exclude mobile
home parks, unlike the situation in *Bristow,* and
like the situation in *Cohen v Canton Twp,* 38 Mich
App 680; 197 NW2d 101 (1972). Indeed 12 acres of
the optioned property in question is already zoned
"R-2". Plaintiffs also testified that there were 30
acres of vacant land zoned "R-2" just west of the
optioned property, and acknowledged that there
were two other parcels of land in town, admittedly
smaller in size, also zoned "R-2" and partially
vacant. Plaintiffs had made no attempt to buy any
of these properties, totaling about 65 acres.

Moreover, there is more than sufficient evidence
existent in the record to show that the village was
not being arbitrary in declining to rezone the
property in question. There exists here a master
plan for village development recently adopted,
apparently well thought out and much discussed
in 11 different council meetings. Notably, the
Court in *Bristow* thought the existence of a master
plan was at least a significant factor to be consid-
ered. See also, *Binkowski, supra,* and *Cohen, su-
pra.* There was no provision under the former
zoning ordinance made for trailer parks; now, of
course, there is in the designated "R-2" zones.
While there was evidence that the present income
from the land was insufficient to pay taxes, plain-
tiffs alleged in their complaint that the present
value of the land was $35,000, thus taking this
case out of the context of the holding of *Pederson
v Harrison Twp,* 21 Mich App 535; 175 NW2d 817

(1970), where the land was found unmarketable as zoned.

Significantly, there was testimony by the consulting engineer for Birch Run that the water supply of the village was just adequate to serve the existing population, and that with population increases new wells would have to be obtained somewhere unless a new water supply could be obtained from Flint or Saginaw. Indeed, the engineer testified that the public health service limits for chloride content in the present water supply had already been exceeded and the only reason the State Health Department permitted the wells to be used was because there was no other available supply.

A planning director for the Saginaw County Metropolitan Planning Commission who assisted in drawing up the master plan for Birch Run testified that "the proposed entire usage and the number of units would be grossly inconsistent with the master plan". He also stated that were the disputed land rezoned "R-2" it would destroy the integrity of the plan, since multi-family housing could arise there by right even though areas had already been zoned for multi-family development in other parts of the village.

From the testimony and other evidence from various sources it is clear to us that the village council was not arbitrary or unreasonable in denying plaintiffs' request to have their optioned property rezoned. Rather, the village council properly weighed the competing interests involved and measured the potential impact a 454-unit or 225-unit mobile home park would have on a village with only 300 dwellings. There is no evidence that the village council intended to totally exclude mobile home parks from the village, directly or indirectly.

Rather, there seems to be a proper concern for the resources of the village in light of its projected growth rate coupled with a concern about the quality of living that will exist in the village in the future. In the face of strong evidence submitted by the defendant supporting such concerns, plaintiffs did not meet their burden of proof to justify rezoning. *Binkowski, supra.*

Reversed. No costs, a public question being involved.

All concurred.