PALMER v TOWNSHIP OF SUPERIOR

1. ZONING—REVIEW—DE NOVO REVIEW—FINDINGS.

The Court of Appeals reviews de novo the record in zoning cases and considerable weight is given to the findings of the trial judge.

2. ZONING—ORDINANCES—VALIDITY—REASONABLENESS—BURDEN OF PROOF.

Zoning is a local legislative determination which courts cannot upset in the absence of significant evidence of unreasonableness; a zoning ordinance is clothed with a presumption of validity and a party attacking an ordinance bears the burden of proof.

3. ZONING—CONSTITUTIONAL LAW—ORDINANCES—VALIDITY—REASONABLENESS—BURDEN OF PROOF.

Parties attacking a zoning ordinance are required to show that the municipality via its ordinance denied them substantive or procedural due process, or equal protection of the laws, or deprived them of their property without just compensation; to each of these claims the court will apply the proofs presented and determine if the plaintiffs have met their burden in show-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning §§ 231, 255.

[1, 2, 9] Construction and application of provisions for variations in application of zoning regulations and special exceptions thereto. 168 ALR 13.

[2, 3, 6] 58 Am Jur, Zoning §§ 16, 256.

[4, 5] 58 Am Jur, Zoning § 27.

Spot zoning. 51 ALR2d 263.

[6, 7] 58 Am Jur, Zoning § 140.

[7] 58 Am Jur, Zoning § 28.

[8, 9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 374 *et seq.*

[9] 58 Am Jur, Zoning § 63.

Use of trailer or similar structure for residence purposes as within limitation of restrictive covenant, zoning provision, or building regulation. 96 ALR2d 232.

Maintenance or regulation by public authorities of tourist or trailer camps, motor courts, or motels. 22 ALR2d 774.

ing the ordinance in question to be unreasonable, for reasonableness is the test of a zoning ordinance's validity.

4. ZONING—REGULATIONS—MASTER PLAN—FUTURE DEVELOPMENT—
   STATUTES.

The statute empowering municipalities to enact zoning regulations requires localities to zone in accordance with a master plan and to examine, among other considerations, the general trend and character of building and population development (MCLA 125.581).

5. ZONING—ORDINANCES—VALIDITY—FUTURE DEVELOPMENTS—REA-
   SONABLENESS.

An appellate court when considering a zoning ordinance is not required to close its eyes to developments or improvements within a municipality which are imminent or a factual certainty; the measure of such consideration must be the certainty or speculative nature of the future conditions which a municipality asserts will render its ordinance reasonable and proper, and a court must be sensitive to the harm which might befall a community in the future if a proposed use is permitted because circumstances do not yet justify the prohibition of that use.

6. ZONING—CONSTITUTIONAL LAW—ORDINANCES—REASONABLENESS—
   CONFISCATORY ZONING.

A party who claims that a zoning ordinance is constitutionally unreasonable because it is confiscatory as applied to his property must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adaptable.

7. ZONING—CONSTITUTIONAL LAW—REASONABLENESS—VALUE OF
   LAND.

Evidence of a discrepancy between the value of land as used for purposes allowed by a zoning ordinance and the value of a prohibited use bears on the issue of the constitutional reasonableness of the ordinance, but is not dispositive of it; a municipality is not required to sanction the highest and best use of a property.

8. STATUTES—ORDINANCES—CONFLICT—PREEMPTION.

The test in determining whether provisions of a municipal ordinance conflict with a statute covering the same subject is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits; the fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict

therewith, unless the statute limits the requirement for all cases to its own prescription.

9. ZONING—STATUTES—ORDINANCES—CONFLICT—TRAILER PARKS.

   A township zoning ordinance regulating the establishment and operation of trailer parks is not preempted by a statute regulating trailer parks where the statutory language shows an intent to impose minimum, but not the only, standards.

Appeal from Washtenaw, Patrick J. Conlin, J. Submitted Division 2 March 5, 1975, at Lansing. (Docket No. 20033.) Decided April 25, 1975.

Complaint by Theron and Marian Palmer against Superior Township for a declaratory judgment that a township ordinance was unconstitutional as applied to plaintiffs' property and conflicted with a state statute. Judgment for defendant. Plaintiff appeals. Affirmed.

*Dale D. Libby,* for plaintiffs.

*Hamilton & McDonald, P. C.,* for defendant.

Before: QUINN, P. J., and BASHARA and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiffs appeal from an April 3, 1974 judgment by the Washtenaw County Circuit Court which denied their request for a declaratory judgment. Plaintiffs had asked the trial court to declare defendant's zoning ordinance unconstitutional insofar as it prohibits plaintiffs' property from use as a trailer park and to declare article X-D of the ordinance void for conflicting with the Mobile Home Park Act of 1959.

Plaintiffs own 160 acres of land, situated along Geddes Road and Ridge Road in Superior Township. Plaintiffs' land, and, according to their estimate, 80% of all the land in Superior Township, is

zoned AG-1, agricultural. Property zoned AG-1 classification is limited to farms, country estates and similar agricultural enterprises. Also, one-family detached dwellings other than farm buildings may be constructed provided the land area is at least one acre, and its width is at least 165 feet. Plaintiffs cited "extensive residential use" of land in AG-1 districts.

In April of 1971, plaintiffs contracted to sell 153 of their 160 acres (Parcel A) for $384,510 subject to the condition that the land could be used for mobile homes. Plaintiffs also planned to develop the remaining seven acres (Parcel B) as a shopping center for the trailer park. At about the same time, plaintiffs filed an application with defendant's planning commission to rezone parcel A from an AG-1, agricultural, district to MH-1, mobile home, and parcel B from an AG-1 to CM-1, commercial, district. The planning commission denied plaintiffs' application. After a public hearing, the township board affirmed the denial, and plaintiffs filed the instant suit.

At trial, plaintiffs testified that they had farmed the subject land since 1947. They claimed that, because of increased taxes and expenses, the farm had operated "in the red" for the past two years and that it was no longer economically feasible to use the land as a farm. Before putting the property on the market, plaintiffs employed an urban planner and land use specialist, Malcom Waring, to do a feasibility study on types of land use. Under defendant's master plan, the land was eventually to be zoned for industry. Mr. Waring, however, ruled out using the property for industrial purposes because of the lack of railroad facilities and of roads suitable for heavy trucks. David Jokinen, another city planner and real estate ex-

pert called as a trial witness by plaintiffs, felt that using it for residential subdivision would be infeasible because such a subdivision would require large lots whose cost would severely limit the potential market, given the unavailability of financing and expense of platting. According to Mr. Waring and to David Jokinen, the property was best suited for mobile homes, a use for which a large demand exists.

Mr. Jokinen testified at trial that the property was currently assessed at $93,000, or 50% of its present worth, $186,000. He stated that, for speculative purposes, its highest value would be $300,-000. He estimated that, if zoned to allow mobile homes, the land would be worth $1,000,000. He opined that automobile traffic generated by the trailer park would not overtax the existing roads. Jokinen detailed the tests which had been made on plaintiffs' land to determine the availability of water and sewage facilities. He stated that water was available through wells and that on-site sewage treatment could be built by the trailer park and would be much cheaper than tapping into the town's facilities.

Defendant's witnesses expanded upon the reasons which the township board gave in rejecting plaintiffs' request for rezoning:

"1. Sewage disposal at the present time is uncertain.

"2. The public road system is inadequate for the added traffic.

"3. The density of dwellings, in terms of design standards, is unnecessarily great for this area.

"4. Storm drainage is not designed adequately.

"5. Not compatible with the [m]aster [p]lan.

"6. Impact on the already over-crowded Willow Run School system.

"7. Accessibility and adequacy of the parks and size of the parks for the density of the area is inadequate.

"8. This development is poorly designed from an aesthetic standpoint."

Defendant stressed the fact that plaintiffs' proposed use was incompatible with the township master plan. Plaintiffs' land was seen as a future "buffer area" between incompatible industrial and residential areas. The master plan was created to assure orderly development of the area. Further, defendant noted, the town had rezoned to allow trailer parks in two other areas where it was consistent with the master plan.

On appeal, plaintiffs make the same two claims that they raised at trial. First, they claim that defendant's zoning ordinance is invalid as applied to their land because it "does not bear a real and substantial relationship to the public health, safety, morals or general welfare" and because the effect of the ordinance is confiscatory.

In denying this claim, the trial court stated its findings as:

"(1) The ordinance prohibits the most profitable use of the plaintiffs' property, but the loss is not so significant as to become confiscatory.

"(2) The ordinance bears a reasonable relationship to the public health, safety and welfare, and the relationship is substantial enough to outweigh any presumption of unreasonableness created by the financial loss."

The trial court detailed its justification for its first finding:

"The purchase price stated in the plaintiffs' conditional sale contract is $384,510. In contrast, the plaintiffs' witnesses testified that the market value of the property as farmland is $186,000—apparently obtained

by doubling the current property tax valuation. How-
ever, the same witness testified that the value to a
purchaser speculating on longterm development pat-
terns would exceed $300,000, so it appears that the
'decline' in value caused by the Township's refusal to
rezone is, at most, the difference between $384,000 and
$300,000. While this difference is significant, it is well
established that a zoning ordinance is not unreasonable
simply because it prohibits the *most* profitable use.
*Albert v Kalamazoo Twp,* 37 Mich App 212 (1971);
*White Lake Twp v Amos,* 371 Mich 693 (1963)." (Em-
phasis in original.)

The court cited several justifications for its hold-
ing that defendant's ordinance met the "reasona-
ble relationship" standard. First, mobile homes:

"create a demand for municipal services that is dis-
proportionate to their contribution to property tax reve-
nues. * * * The imbalance which would be created by
the plaintiffs' development is further demonstrated by
the fact that construction of the 939 proposed sites
would represent a 75% increase in the number of
available spaces, not just in Superior Township, but in
all of Washtenaw County."

In addition, the court noted the "inadequacy of
the township's present fire protection arrange-
ments, which are in part borrowed from a neigh-
boring municipality" and sewage treatment facili-
ties which would be inadequate to serve the in-
creased population. Finally:

"[t]he area of the proposed development is also sus-
ceptible to flooding at various times of the year. A map
of the proposed physical layout shows a diagonal swath
cutting through the park labeled as a 'recreation area'.
This strip, which constitutes a significant portion of the
total proposed recreation area, is actually a drainage
ditch."

In zoning cases, this Court reviews *de novo* the record on appeal. *Biske v Troy,* 381 Mich 611; 166 NW2d 453 (1969), *Wilkins v Village of Birch Run,* 48 Mich App 57; 209 NW2d 863 (1973). Considerable weight is given to the findings of the trial judge, *Christine Building Co v Troy,* 367 Mich 508; 116 NW2d 816 (1962), *El'Chonen v Van Buren Township,* 56 Mich App 1; 223 NW2d 335 (1974).

Initially, we must determine the standard of review that has been mandated by the Supreme Court. Our confusion stems from a reading of the two most recent Supreme Court cases in point, *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), and *West v Portage,* 392 Mich 458; 221 NW2d 303 (1974). In *Kropf, supra,* the Supreme Court overruled a line of cases in which this Court had held that certain uses, including mobile homes, were "favored uses". In these cases, where a municipality sought to exclude a favored use, the burden of proof shifted to the municipality to show that the exclusion was not arbitrary, capricious or unreasonable. See, *e.g., Bristow v Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971), *lv den,* 386 Mich 764 (1971), *Simmons v Royal Oak,* 38 Mich App 496; 196 NW2d 811 (1972), *lv den,* 387 Mich 794 (1972).[1] *Kropf* rejected the "favored or preferred use" concept and the attendant shifting of burden of proof. 391 Mich 139, 156; 215 NW2d 179, 186 (1974).

In *Kropf,* four Justices, through Chief Justice T. M. KAVANAGH, reaffirmed the standards set forth in a number of earlier cases, notably *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 430–432; 86 NW2d 166 (1957), and *Northwood Proper-*

---

[1] *Bristow* was also interpreted to require the shifting of the burden of going forward, not the burden of proof. *Binkowski v Shelby Township,* 46 Mich App 451; 208 NW2d 243 (1973). The trial court here used the *Bristow* standard and upheld defendant's zoning ordinance.

*ties Co v Royal Oak City Inspector,* 325 Mich 419, 422–423; 39 NW2d 25 (1949).[2] Those cases viewed zoning as a local legislative determination which courts could not upset in the absence of significant evidence of unreasonableness. The *Kropf* majority stressed that a zoning ordinance is clothed with a presumption of validity and that plaintiffs bore the burden of proof in attacking an ordinance. The *Kropf* court required plaintiffs to:

"show that the city, via its ordinance denied them substantive or procedural due process, equal protection of the laws, or deprived them of their property without just compensation. To each of these claims the court will apply their proofs presented and determine if they have met their burden in showing the ordinance in question to be 'unreasonable', for, as we have said, reasonableness is the test of its validity." *Id.* at 156–157.

A concurrence by two Justices, however, opted for a different standard. In the concurrence, Justice LEVIN stated that not all zoning decisions should be classified as "legislative". Some decisions should be deemed "administrative" actions. Justice LEVIN cited the classic distinction first made by the United States Supreme Court in *Bi-Metallic Investment Co v State Board of Equalization of Colorado,* 239 US 441; 36 S Ct 141; 60 L Ed 372 (1915), between "legislative" and "adjudicative" action by an administrative body. See also 1 Davis, Administrative Law Treatise, § 7.04, p 421.

As the concurring Justices noted:

"When action is based on general grounds, the decision is ordinarily legislative. When it is based on individual grounds, it is ordinarily administrative." (Footnote omitted.) 391 Mich at 166.

---

[2] Justice FITZGERALD did not participate in the case.

Where a municipality engages in a broad rezoning or in creating a new zoning map, actions which affect a large number of citizens, it is acting legislatively. However, where a local board makes a decision on an individual request for rezoning, it is acting administratively.

How the local action is classified is crucial. The burden on the party attacking the zoning decision and the quantum of proof required vary widely depending on the classification. Where a "maintenance of a use restriction truly reflects legislative action * * * the courts may then properly require a person attacking the restriction to prove that *no use permitted is reasonable". Id.* at 164. (Emphasis in original.) The attacking party must overcome the presumed constitutionality of the ordinance. However, where:

> "maintenance of a use restriction reflects administrative, not legislative, action, the guideline ought to be that generally followed by zoning authorities in granting or denying applications for a change in a use restriction as it affects particular property—*the reasonableness of the proposed use."* (Emphasis in original.) *Id.*

A reviewing court would examine the administrative decision to determine if it was based upon "competent, material and substantial evidence on the whole record". Const 1963, art 6, § 28, *Viculin v Department of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971), *Keating Intl Corp v Orion Township,* 51 Mich App 122; 214 NW2d 551 (1974).

In *West v Portage, supra,* the Supreme Court ostensibly adopted the rationale of the *Kropf* concurrence. *West* involved an attempt by a group of Portage citizens to enjoin the rezoning of a particular piece of property and to hold a referendum on

the proposed rezoning. Four Justices, citing the *Kropf* concurrence, held that referenda could be held concerning legislative, but not administrative acts. The rezoning of a specific parcel was held to be an administrative act, one governed by administrative standards. *West* at 466–472.

However, one of the four majority Justices, Justice COLEMAN, voted to concur in the result only. This apparently means that the rationale of the *Kropf* concurrence could garner only three votes. In the absence of a more definitive Supreme Court decision we choose to utilize the standards set forth in the *Kropf* majority.

Plaintiffs challenge defendant's refusal to rezone their property on numerous grounds. Several of these deal with administrative, not legislative, decision-making and would be cogent if we applied the *Kropf* concurrence-*West* test: that the Superior Township board has no standards to guide it in deciding requests for rezoning; that rezoning decisions have been selective and, in this case, inconsistent with the master plan. However, since we are applying the test of the *Kropf* majority, these reasons are of no force.

Plaintiffs also claim that defendant's zoning ordinance is unreasonable as applied to their property because the grounds for zoning it for agricultural, not for mobile homes, are speculative, therefore improper. Specifically, plaintiffs question defendant's claims that sewage facilities would be inadequate for a trailer park, roads would be overtaxed, and schools would become overcrowded. Some cases have held that a city may take into account the probable future development of the community in establishing zoning patterns, where it does so with a reasonable relationship to presently existing conditions. *Bzovi v Livonia,* 350

Mich 489; 87 NW2d 110 (1957), *Rottman v Waterford Township,* 13 Mich App 271; 164 NW2d 409 (1968). The statute empowering municipalities to enact zoning regulations requires localities to zone in accordance with a master plan and to examine, among other considerations, "the general trend and character of building and population development". MCLA 125.581; MSA 5.2931. See also 1931 PA 285; MCLA 125.31 *et seq.;* MSA 5.2991 *et seq.* The majority of cases have ruled that zoning patterns and rezoning decisions must be decided strictly in accordance with existing conditions. *Biske v Troy, supra, Pederson v Harrison Township,* 21 Mich App 535; 175 NW2d 817 (1970), *lv den,* 383 Mich 777 (1970).[3] The Supreme Court in *Kropf* utilized a balancing test by adopting the language of this Court's opinion as a standard:

> " 'While the rule is clear we cannot believe that this Court is required to close its eyes to developments or improvements within the municipality which are imminent or a factual certainty. The measure of such consideration must be the certainty or speculative nature of the "future conditions" which the municipality asserts will render its ordinance reasonable and proper. Furthermore, we must be sensitive to the harm which might befall the community in the future if the use proposed by the property owner is permitted because circumstances do not yet justify the prohibition.' " *Kropf* at 151, citing 41 Mich App 21, 26 (1972).

We agree with the trial court, that the road, school and sewage problems are sufficiently "imminent" and factually certain to demonstrate the reasonableness of defendant's ordinance as applied to plaintiffs' property. Both the school and sewer facilities were shown to be already near full utili-

---

[3] For a good discussion of this issue, see the dissent in the Court of Appeals decision in *Kropf,* 41 Mich App 21, 29; 199 NW2d 567 (1972).

zation. The trailer park would add a significant burden to both. This Court held such reasons not to be speculative in *Cohen v Canton Township,* 38 Mich App 680; 197 NW2d 101 (1972). There defendant township was similarly underdeveloped and endeavoring to place an orderly structure on its growth. See also *Wilkins v Village of Birch Run,* 48 Mich App 57; 209 NW2d 863 (1973), *cf. Pederson v Harrison Township, supra.*

Plaintiffs also claim that defendant's ordinance is constitutionally unreasonable because it is confiscatory as applied to their property. To succeed in this claim, plaintiffs "must show that if the ordinance is enforced the consequent restrictions on [their] property preclude its use for *any purposes* to which it is reasonably adapted". *Kropf* at 163 (Emphasis supplied.)[4] Here, plaintiffs showed a discrepancy between the value of their land as used for agriculture, residential or speculative purposes and as used for mobile homes. Such a discrepancy bears on the issue of reasonableness, but is not dispositive of it. *Smith v Village of Wood Creek,* 371 Mich 127; 123 NW2d 210 (1963). As the trial court stated, a municipality is not required to sanction the highest and best use of property. Since plaintiffs did not list their property with a broker but used their son as an agent, they presented no evidence of their inability to sell the property for purposes allowed by the zoning. Plaintiffs' own witness stated that the property could be sold for speculative purposes for as much as $300,-000. Although one of plaintiffs' witnesses valued their land at $1,000,000 if used for mobile homes, the actual purchase price was much less, $384,510. The estimate must have been based on the prop-

---

[4] Citing *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957), *Smith v Village of Wood Creek Farms,* 371 Mich 127; 123 NW2d 210 (1963).

erty as subdivided and improved. See also *Cohen v Canton Township, supra.*

## II

Plaintiffs' second challenge to defendant's ordinance is their claim that article X-D of the ordinance, which regulates the establishment and operation of trailer parks, is void because it conflicts with the terms of the state Mobile Home Park Act, 1959 PA 243; MCLA 125.1001 *et seq.;* MSA 5.278(31) *et seq.* The state act, it is claimed, preempts the field of regulation. Several standards required by defendant's ordinance are more rigid than those mandated by the state act. Defendant's board based its refusal to rezone on several alleged failures in the proposed design of the trailer park planned for plaintiffs' property: density of trailers too great; inadequately designed storm drainage; poor design from an aesthetic standpoint.

The trial court held that:

"In the instant case, Section 10d.04 of Article X-D expressly acknowledges the superiority of the State law over any conflicting local provision. Thus the ordinance is automatically immunized against an *ultra vires* challenge. The plaintiffs can therefore avoid the enforcement of any conflicting provisions of Article X-D, but the article is not defective on its face. In addition, MSA 5.278 (46, 81, 86 and 87) recognize that municipalities may enact non-conflicting supplemental regulations."

In *Miller v Fabius Township Board,* 366 Mich 250, 256–257; 114 NW2d 205, 207–208 (1962), the Supreme Court set out as a guide for cases such as this one:

" 'It has been held that in determining whether the provisions of a municipal ordinance conflict with a

statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.

* * *

" 'The mere fact that the State, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has *expressly* licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. *Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail.' (Emphasis supplied.)"* [Emphasis supplied.][5]

We must ask " 'whether the [state] scheme can work effectively in the face of local intervention' ". *Walsh v River Rouge*, 385 Mich 623, 639; 189 NW2d 318, 326 (1971).[6] Here, § 16 of the state act, MCLA 125.1016; MSA 5.278(46), states:

"Nothing in this act * * * shall relieve the applicant

[5] Quoting from 37 Am Jur, Municipal Corporations, § 165, p 790.

[6] Quoting from Feiler, *Conflict Between State and Local Enactments —The Doctrine of Implied Preemption,* 2 Urban Lawyer 398, 405 (1970). See also *Detroit v Judge, Recorder's Court,* 56 Mich App 224; 223 NW2d 722 (1974).

for a permit to construct a trailer coach park or relieve the person owning or operating an existing park from responsibility for securing any building permits or complying with *all applicable codes, regulations or ordinances not in conflict with this act."* (Emphasis supplied.)

We find that defendant's ordinance X-D is not preempted by nor does it conflict with the state act.[7] The state act in several places provides for minimum standards for trailer parks. Whenever it provides for specific safety standards, the act uses the terms "at least" or "not less than". We perceive an intent to impose the minimum, not the only, standards. Defendant's ordinance seeks to more strictly regulate construction of mobile homes in accordance with the needs of Superior Township. Allowing localities to set *reasonable,*

---

[7] In holding that the state Mobile Home Park Act does not preempt the regulatory field, we are adopting the opinion of one panel of this Court, *Sabo v Monroe Township,* 46 Mich App 344; 208 NW2d 57 (1973), *leave granted,* 390 Mich 764 (1973), over that of another panel, *Fye v Bouma,* 38 Mich App 667; 197 NW2d 114 (1972), *lv den,* 388 Mich 759 (1972). *Fye* held the state act to be exclusive and preemptive. *See also Moorman v State Health Commissioner,* 2 Mich App 446; 140 NW2d 554 (1966). *Sabo* held that a municipality may impose greater restrictions on the establishment and operation of trailer parks than that required by the state act.

First, *Fye v Bouma* placed its primary reliance on the case of *Richards v Pontiac,* 305 Mich 666; 9 NW2d 885 (1943). As the Court noted, *Richards,* in analyzing the predecessor to the Mobile Home Park Act of 1959, held "[i]ts intent and purpose is to take over the entire field of regulation and supervision of trailer parks in the State." *Id.* at 672. However, the Supreme Court stated in a recent preemption case "[i]n *Bane v Pontiac Twp,* 343 Mich 481 [72 NW2d 134] (1955), this Court concluded after an examination of later cases that the State had not attempted to take over the entire field of regulation and supervision of trailer parks." *Walsh v River Rouge,* 385 Mich 623, 638 n 4; 189 NW2d 318, 325 n 4 (1971). Further, the cases cited by the *Richards* Court as authority, *National Amusement Co v Johnson,* 270 Mich 613; 259 NW 342 (1935), and *People v McDaniel,* 303 Mich 90; 5 NW2d 667 (1942), both involved situations where municipalities were attempting to ban completely activities which state statutes had allowed to exist with specific conditions. Here, defendant's ordinance does not attempt to completely exclude mobile homes, but to more strictly regulate their construction.

stricter standards is consistent with the legislative intent to assure safe and aesthetically pleasing trailer parks throughout the state while also guaranteeing to municipalities the power to regulate the types of structures erected on their land as it has done in the township rural zoning act, 1943 PA 184; MCLA 125.271 *et seq.;* MSA 5.2963(1) *et seq.* That act specifically authorizes localities to regulate "trailer coaches" with regard to physical conditions, "specific uses * * * area of yards, courts, and other open spaces, * * * the sanitary, safety and protective measures", and the number of families which may be housed. MCLA 125.271; MSA 5.2963(1).

We hold, further, that, even if defendant's ordinance X-D is preempted, there are sufficient grounds not based on that ordinance to sustain the reasonableness of defendant's zoning ordinance as applied in this case.

Affirmed. Costs to defendant.