WOLVERINE SIGN WORKS *v.* CITY OF BLOOMFIELD HILLS.

1. MUNICIPAL CORPORATIONS—REGULATION OF BILLBOARDS.
   A city may establish zones and prohibit the erection of bill-
   boards therein and may, to promote public health, safety and
   general welfare, within reasonable considerations, regulate the
   maintenance of billboards but may not arbitrarily strike down
   the maintenance of erected billboards or vest such power of
   arbitrary action in municipal officers.

2. SAME—ORDINANCES—BILLBOARDS—PERMITS—AESTHETICS.
   Ordinances prohibiting erection of billboards within city limits
   except by permission of commission upon proper showing to
   the commission that construction and maintenance of the bill-
   board will not be offensive to the inhabitants of the municipal
   corporation nor detract from beauty of surrounding neighbor-
   hood and providing that such permission is to be revocable at
   will of commission *held,* without the power of the municipal
   corporation to enact.

BUTZEL and BUSHNELL, JJ., dissenting in part.

Appeal from Oakland; Gillespie (Glenn C.), J.
Submitted October 20, 1936. (Docket No. 51, Cal-
endar No. 38,863.) Decided March 2, 1937.

Bill by Wolverine Sign Works, a Michigan cor-
poration, against the City of Bloomfield Hills, a
municipal corporation, and others to construe an
ordinance, to have an ordinance declared uncon-
stitutional, for an injunction and other relief. From
decree for plaintiff, defendants appeal. Affirmed.

*Miner & Miner,* for plaintiff.

*Atkinson, Ortman & Watson (Frank W. Atkinson, of counsel), for defendants.*

Wiest, J. Clara E. Benedict, the owner of a tract of unplatted, vacant and unimproved property, fronting on Woodward avenue in the city of Bloomfield Hills, in February, 1927, rented billboard location space to plaintiff Wolverine Sign Works and three billboards have been erected thereon; two 52 feet in length and 16 feet in height, inclusive of four feet of ornamental lattice work and eight inches of open space at the bottoms. These boards stand back about 50 to 100 feet from the highway line and from 600 to 800 feet from Miss Benedict's home, the nearest building. Another and smaller billboard is about 40 feet from the highway line. The billboards have been kept in repair and have carried proper commercial advertisements.

The police of the city, under claim that maintenance of the billboards violated ordinances and zoning restrictions of the city, stopped plaintiff's painting crew from working thereon. Thereupon plaintiff applied for a permit and it was refused. In October, 1933, workmen engaged in repainting the billboards were arrested and required to give bail. Then this suit was brought to restrain defendant city from interfering with plaintiff's use of the property and, under the pleadings, the validity of the ordinance, as applied to the instant case of maintenance of the billboards, constituted the issue. Proofs were taken and, by decree, the city was enjoined.

The city, by appeal, contends:

"(1) That the legislature has given the city power to pass valid ordinances restricting the use of signboards within the city.

"(2) That the enforcement of such ordinances does not deprive plaintiff of any of the privileges granted to it by the Constitution of the United States or the Constitution of the State of Michigan.

"(3) That the ordinances governing the erection and maintenance of billboards are valid and enforceable."

We do not need to set forth the several ordinances. It is sufficient to say that in effect they prohibited maintenance of the billboards without a permit and, as demonstrated by the city officials, no permit will be granted and, therefore, their continuance subjects the owner thereof to the penal provisions for violation, destroys the lease use, a property right, and incidentally takes from the owner of the land the right of such rental.

As characteristic of all the ordinances we quote the following from ordinance No. 1:

"No person or persons shall construct or maintain within the limits of the Village of Bloomfield Hills any billboard except by permission of the village commission upon proper showing that the construction and maintenance of such billboard shall not be offensive to the inhabitants of said village, or detract from the beauty of the surrounding neighborhood. Permission so given shall be revocable at the will of the village commission."

The billboards were on private property, set back from the highway, did not at all interfere with any highway use or view, were far removed from dwellings, stood on unplatted land, formerly used for farming and now not suited for any other purpose, and will so remain until, if and when wanted for residence use.

The underlying purpose of the ordinance is probably disclosed by the following contention in the brief of counsel for the city:

"It is the claim of the defendant that when the legislature has granted in specific terms the power to enact ordinances for the conservation of property values that such ordinances may be drawn with the definite purpose of conserving property values in a particular district and that such ordinance may have as its main motivating factor the preservation of the natural beauty of the landscape for the pleasure and enjoyment of the residents of the city."

Aesthetics may be an incident but cannot be the moving factor.

The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards but may not arbitrarily strike down the maintenance of erected billboards or vest such power of arbitrary action in municipal officers.

The quoted ordinance so offends and in such particular is invalid and the decree so adjudging is affirmed, with costs to plaintiff.

FEAD, C. J., and NORTH, J., concurred with WIEST, J.

BUTZEL, J. (*dissenting in part*). A number of signboards are involved in this case. The effective date of the first ordinance was May 2, 1927. On February 7, 1927, there were two large signboards on the property in question. An additional one was erected on February 14, 1927, and still another was put up sometime between February 7, 1927, and

July 1, 1927. On March 10, 1933, one of the two original signs was taken down leaving three billboards on the property in question. I concur in the foregoing opinion as to the two signboards remaining on the property and erected prior to May 2, 1927, on the ground that the ordinance could not be retroactive in its application and there is no showing that the billboards were nuisances *per se.* *Illinois Life Ins. Co.* v. *City of Chicago,* 244 Ill. App. 185; *Whitmier & Filbrick Co.* v. *City of Buffalo,* 118 Fed. 773. The burden was on plaintiff to show that the third billboard was erected prior to May 2, 1927. This it failed to do and in the absence of such a showing it is not entitled to any relief in this regard.

While numerous courts heretofore have approved the rule that ordinances of this character will not be upheld if they are based upon æsthetic reasons alone, many of the decisions, in order to uphold ordinances of this type, have supplemented the æsthetic reasons with fantastic arguments that billboards are a menace to public safety, that they provide convenient places to harbor the criminal and that they furnish a rendezvous for immorality. We hold that where a regulation of billboards does not apply indiscriminately to the entire city, but merely to billboards in close proximity to parks and boulevards, it has a proper relation to the public health, comfort and welfare which it would not otherwise possess. So construed, the ordinances in question constitute a valid exercise of the police power.

In the district involved the property in question fronts on Woodward avenue where there are two wide roadways for traffic going in opposite directions and in the center of the two roadways is a 40-

foot parkway which has been improved with shrubbery and grass. There has been considerable landscaping by the State and some of it by property owners along the avenue. There is nothing unreasonable in an ordinance that forbids the property along the avenue from being disfigured by the erection of billboards no matter how inoffensive the advertising might be. The photographs offered in evidence impress one with the scenic beauty of the entire district and the efforts to maintain this condition are advantageous both to the property owner as well as to the general public who use the wide roadways established by the State for health, recreation and the satisfaction of riding in what is virtually a beautiful park.

In *State, ex rel. Civello,* v. *City of New Orleans,* 154 La. 271, 284 (97 South. 440, 33 A. L. R. 260), in sustaining a zoning ordinance of the city of New Orleans under which a retail grocery store was excluded from a residence district, the court said:

"If by the term 'æsthetic considerations' is meant a regard * * * for outward appearances, for good taste in the matter of the beauty of the neighborhood itself, we do not observe any substantial reasons for saying that such consideration is not a matter of general welfare. The beauty of a * * * residence neighborhood * * * is for the comfort and happiness of the residents, and it sustains * * * the value of the property in the neighborhood."

See, also, *General Outdoor Advertising Co.* v. *City of Indianapolis,* 202 Ind. 85 (172 N. E. 309, 72 A. L. R. 453); *Ware* v. *City of Wichita,* 113 Kan. 153 (214 Pac. 99); *State, ex rel. Carter,* v. *Harper,* 182 Wis. 148 (196 N. W. 451, 33 A. L. R. 269).

There was no unlawful delegation of legislative power to the commission which issued licenses. The

ordinances precluded the arbitrary exercise of discretion by requiring the licensing body to determine whether "the construction and maintenance of such billboard shall not be offensive to the inhabitants of said village, or detract from the beauty of the surrounding neighborhood."

A decree should be entered in accordance with this opinion. No costs on appeal should be allowed as the question is one of public nature.

BUSHNELL, J., concurred with BUTZEL, J. TOY, J., took no part in this decision. POTTER and SHARPE, JJ., did not sit.