RICHARDS v. CITY OF PONTIAC.

1. MUNICIPAL CORPORATIONS—PURPOSE OF HOUSING LAW.

The purpose of the State housing law was to promote the health, safety and welfare of the people by the regulation of building requirements, alterations, and improvements in permanent dwellings in cities with a population of 10,000 or more (Act No. 167, Pub. Acts 1917, as amended by Act No. 303, Pub. Acts 1939).

2. SAME—SCOPE OF HOUSING LAW—TRAILERS AND TRAILER CAMPS.

Judicial notice is taken of the fact that when the State housing law was enacted the problems arising out of trailer camps were not a matter requiring legislation and it was not intended that the act would apply to trailers and trailer camps (Act No. 167, Pub. Acts 1917, as amended by Act No. 303, Pub. Acts 1939).

3. SAME—TRAILER PARKS—HOUSING LAW—STATUTES.

The purpose of the amended State law pertaining to house trailers is to provide for the regulation, licensing and inspection of house trailer camps in all parts of the State, in all cities as well as townships, trailers used as permanent as well as temporary dwellings, as an emergency measure because of a shortage of habitable houses for defense workers, and to take over the entire field of regulation and supervision of trailer parks but not to repeal the State housing law (Act No. 167, Pub. Acts 1917, as amended by Act No. 303, Pub. Acts 1939; Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941.

4. SAME—CONFLICT BETWEEN STATE LAW AND MUNICIPAL ORDINANCE.

In the absence of specific statutory or charter power in a municipality, an ordinance which contravenes a State law is void.

5. SAME—REGULATION—PROHIBITION.

What the legislature permits, a city cannot suppress without express authority therefor.

6. Same—Trailer Camps—Statutes—Ordinances.

City ordinance regulating trailer camps is void in so far as it provides for time limit for parking trailers therein and requires a fee for license to operate such camp, in view of fact that State trailer law permits a trailer to remain an indefinite length of time in such a park and provides for license fees and their allocation to various governmental units, including cities (Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941; Pontiac Ordinance No. 978).

7. Same—Restrictive Provisions of Zoning Ordinance.

The legitimate purpose of a zoning ordinance, in its restrictive provisions, is to preserve and not to disrupt existing conditions.

8. Same—Trailer Camps—Nuisances—Regulation.

The operation of a trailer park is not a nuisance *per se,* but should it become a nuisance *per accidens,* then regulation may be called for.

9. Same—Trailer Camp—Zoning Ordinance—Vested Rights—Statutes.

Trailer camp operators who had purchased site for camp within city limits and operated a trailer camp prior to the existence of pertinent city zoning ordinance have a vested right to operate such trailer camp in accordance with State law governing such institutions or as such act may be amended (Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941; Pontiac Ordinance No. 944).

Appeal from Oakland; Holland (H. Russel), J. Submitted April 8, 1943. (Docket No. 25, Calendar No. 42,316.) Decided June 7, 1943.

Bill by LeRoy Richards and wife against the City of Pontiac and Director of Public Health of the City of Pontiac for an injunction restraining the enforcement of an ordinance relative to tourist camps. Cross bill by defendant Director of Public Health of the City of Pontiac against plaintiffs to restrain the operation of a trailer camp. Decree for plaintiffs. Defendants appeal. Affirmed.

*Clarence L. Smith,* for plaintiffs.

*William A. Ewart,* for defendants.

Sharpe, J. This is a suit in chancery for an injunction restraining the city of Pontiac from enforcing the provisions of the city's tourist camp ordinance No. 978.

Plaintiffs are the owners of the Richards Trailer Park. It is located on a two-acre parcel of ground facing Telegraph road. The park is flanked on the south and east by an undeveloped city park and on the north by vacant acreage. In 1937, LeRoy Richards, one of the plaintiffs, conducted a trailer sales agency on a portion of the premises here involved. In April, 1938, plaintiffs purchased the premises here involved for the purpose of continuing their sales agency and operating a trailer coach park for hire. In December, 1938, the city of Pontiac adopted a zoning ordinance by which the Richards' property came within the zone designated as residential property. In October, 1940, the above zoning ordinance was amended and the classification of the area in which plaintiffs' property is located was changed from residential to commercial.

In 1941, plaintiffs received a certificate from the building department of the city of Pontiac authorizing the erection of a building on the property for laundry and toilets for trailer camp.

In March, 1941, the city of Pontiac adopted the city tourist camp ordinance, the following sections of which are involved in the present controversy:

"Sec. 2. It shall be unlawful for any person, firm or corporation to establish, maintain, or operate, within the limits of the city of Pontiac, a tourist camp, without first obtaining a license from the city commission. Such license shall be issued for one year, and shall expire on the last day of March of each year. The fee for such license shall be in the

amount of $10 per year for each unit capacity of the tourist camp.

"SEC. 3.   Any person, firm or corporation desiring to conduct a tourist camp in the city of Pontiac shall make application in writing to the city clerk, upon blanks to be provided by him, and shall state the exact location of the lot, field, or tract of land, upon which it is proposed to establish such camp, and shall contain information as to the number of units in the camp, type of service building, and the number of various sanitary facilities provided; if a partnership or corporation, the names of partners or officials, and the name of attendant or custodian to be in charge of the camp, and shall also contain an agreement on the part of the applicant that in accepting such license that he will comply with all the terms of this ordinance and other city regulations and will permit entry for the purpose of inspection upon such camp premises, and into any building, structure, tent, vehicle or enclosure located upon such premises, at any time that request is made by an authorized inspector or law enforcement officer of the city of Pontiac.

"No license shall be granted for a tourist camp except in Manufacturing 1, 2 and 3, as provided by the city building zone ordinance No. 944 and the said districts, Manufacturing 1, 2 and 3, are hereby designated by the city of Pontiac as the places where tourist camps may be licensed to operate.

"The city clerk, upon receipt of such application, shall request the department of public health, police department, building department, electrical department and fire department, to make an inspection of the camp for the purpose of determining whether the provisions of this, and other city ordinances and State laws are being complied with; and upon certification thereof by the department of public health, police department, building department, electrical department and fire department, the application shall be presented to the city commission, and the

city commission shall act upon said application.
* * *

"SEC. 5. Any occupied camp and/or trailer or house tent may be located at any regularly licensed tourist camp, subject to the provisions of this ordinance for a period not to exceed 3 months in any 12-month period."

In September, 1941, plaintiffs filed a bill of complaint in the circuit court of Oakland county for the purpose of enjoining the city of Pontiac from interfering in any way with their trailer camp under the provisions of the trailer camp ordinance. The director of public health of the city of Pontiac by cross bill seeks to have plaintiffs restrained from using their property as a trailer camp and from renting trailers and substandard houses.

The trial court found that the tourist camp ordinance No. 978 was repugnant to Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941 (Comp. Laws Supp. 1940 and 1942, § 1098–21 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 5.278 [1] *et seq.*), and granted a permanent injunction against interference with plaintiffs by virtue of any authority contained in the ordinance. He also found that the trailer park had been established and so used prior to the adoption of the zoning ordinance and amendment and held that plaintiffs' rights had become vested and could not be disturbed.

Defendants appeal and contend that Act No. 167, Pub. Acts 1917, as amended by Act No. 303, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2487 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 5.2771 *et seq.*),* expressly authorizes the city to make such regulations as are contained in the tourist camp ordinance; that this authority has not been modified by Act No. 143,

* Act No. 91, Pub. Acts 1941, amended sections 1, 19, 99, and 111 of this act.—REPORTER.

Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941; and that the zoning ordinance prohibits the existence of the trailer park in its present location.

In 1917, the legislature enacted Act No. 167, Pub. Acts 1917. This act is known as the housing law of Michigan. Its purpose was to promote the health, safety and welfare of the people by the regulation of building requirements, alterations, and improvements in dwellings in cities with a population of 10,000 or more. We take judicial notice of the fact that when this law was enacted, the problems arising out of trailer camps were not a matter requiring legislation and it was not intended that the above act would apply to the construction of trailers and trailer camps.

In 1939, the legislature enacted Act No. 143. The purpose of this act was to regulate trailers and trailer camps within the corporate limits of townships in the State of Michigan.

At the same session of the legislature, Act No. 303, Pub. Acts 1939, was enacted. This act amended Act No. 167, Pub. Acts 1917. Among its provisions was a proviso (Section 2 [1]) that house trailers "when located in a park or place designated or licensed for the purpose by the corporate community" were excepted from the provisions of the act. The real purpose of the act was to regulate the building and improvement of permanent dwellings.

In 1941, the legislature amended Act No. 143, Pub. Acts 1939, by the enactment of Act No. 255, Pub. Acts 1941. The purpose of this act as amended was the regulation of house trailer camps in all parts of Michigan. It provides for the payment of an annual fee for the operation and maintenance of a trailer park; a certain standard of sanitary conditions; the regulation of the building and improve-

ment of trailer parks; the revocation of licenses to operate trailer parks; the division of fees collected; and the inspection by a health officer.

From an examination of the State housing law (Act No. 167, Pub. Acts 1917, as amended), it is readily seen that the act was designed as a comprehensive statute regulating housing in cities of a certain population, while the trailer act (Act No. 143, Pub. Acts 1939, as amended) applies to trailer coaches and trailer parks. The latest trailer coach law, Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941, was intended to cover the subject of trailer coach parks in cities as well as townships. There was no intention on the part of the legislature to repeal the State housing law by the enactment of the trailer park law.

The principal question in this case relates to the validity of tourist camp ordinance No. 978 of the city of Pontiac. It is urged by plaintiffs that the above ordinance conflicts with Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941. The trailer park act is an emergency act, enacted because of a shortage of habitable houses for defense workers. It was designed for the specific purpose of regulating the trailer type of housing and was intended to apply to trailers as permanent dwellings as well as temporary dwellings. It provides for a monthly license fee of $1.50 for each occupied trailer coach occupying space which is divided as follows: 75 cents to the school board, 50 cents to the county treasurer, and 25 cents to the municipality. The above act permits a trailer coach to remain in a given location for an indefinite length of time. Its intent and purpose is to take over the entire field of regulation and supervision of trailer parks in the State.

The tourist camp ordinance of Pontiac also regulates trailer camps and is in conflict with the State law in that it limits the use of the trailer park to an occupied trailer for a period not to exceed three months in any year; and provides for an annual license fee of $10 for each unit capacity of the tourist camp.

In *National Amusement Co.* v. *Johnson,* 270 Mich. 613, we said:

"It is the rule that, in the absence of specific statutory or charter power in the municipality, the provisions of an ordinance which contravene a State law are void. * * * What the legislature permits, the city cannot suppress, without express authority therefor."

See, also, *People* v. *McDaniel,* 303 Mich. 90.

Defendants urge that the 90-day clause in the ordinance is a valid exercise of legislative power by the city of Pontiac and cite *Cady* v. *City of Detroit,* 289 Mich. 499, as authority for such claim. It is to be noted that the above case was tried and reviewed before Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941, was enacted. At the time of the *Cady Case,* the ordinance before the court, insofar as the 90-day clause was concerned, was not contrary to any State law. In the case at bar, the State by the enactment of appropriate legislation permits unlimited parking of trailers. The ordinance, however, fixes a time limit for the parking of trailers. In that respect it conflicts with State regulations and is therefore void.

The ordinance also provides for a license from the city commission and requires an annual fee of $10 for each unit capacity of the tourist camp. The State law provides for license fees and their allocation to various governmental units. The State

having entered the field of licensing tourist camps, any provision for additional fees, imposed by an ordinance for such licensing, is void.

It is next urged that the zoning ordinance requires elimination of the trailer camp from its present location. The trial court found as a fact that the zoning ordinance involved herein was passed December 20, 1938, and amended effective November 1, 1940; that on the date the zoning ordinance became effective the property in question had been used as a trailer park for a period of approximately a year or more; and that plaintiffs have spent the sum of $8,000 in improving the trailer park.

In *Adams* v. *Kalamazoo Ice & Fuel Co.*, 245 Mich. 261, defendant purchased a lot in the city of Kalamazoo and placed thereon a small building for use as an ice service station. About five months after defendant purchased the property, the city adopted a zoning ordinance, designating the locality involved as a residence district. We there held that regulation and not abatement was the appropriate remedy. We said:

"Threatened invasion of a residence district by business may be an impelling reason for affording protection by way of a zoning ordinance, but such an ordinance may not operate to remove business found there. The legitimate purpose of a zoning ordinance, in its restrictive provisions relative to a residence district, is to preserve and not to disrupt existing conditions."

In *Sandenburgh* v. *Michigamme Oil Co.*, 249 Mich. 372, defendant purchased property in the city of Ann Arbor and proceeded to build a gasoline filling station. While the building was in the process of construction, the city of Ann Arbor amended its

zoning ordinance by placing the premises in the class for residences. We there said:

"Under the zoning ordinance and the regular permit issued, defendant did not proceed and expend money at the peril of revocation of the permit and change of right by subsequent amendment to the zoning ordinance."

In *Wolverine Sign Works* v. *City of Bloomfield Hills,* 279 Mich. 205, we said:

"The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards but may not arbitrarily strike down the maintenance of erected billboards or vest such power of arbitrary action in municipal officers."

In our opinion the operation of a trailer park is not a nuisance *per se.* If the trailer park proves to be a nuisance *per accidens,* then regulation may be called for.

The plaintiffs, having purchased the property, expended money thereon, and operated a trailer camp prior to the existence of either of the zoning ordinances, have a vested right to operate such trailer camp in accordance with the provisions of Act No. 143, Pub. Acts 1939, as amended by Act No. 255, Pub. Acts 1941, or as such act may be amended.

The decree of the trial court is affirmed, with costs to plaintiffs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.