## TOWNSHIP OF ORION v WEBER

Docket No. 77-1398. Submitted February 8, 1978, at Lansing.—Decided June 5, 1978. Leave to appeal applied for.

Orion Township commenced an action against Everett J. Weber and Geraldine A. Weber to enjoin the defendants from carrying on their sand and gravel business, which they have operated for several years. Defendants' business is a valid nonconforming use under the zoning law, but the injunction was sought pursuant to a township ordinance regulating the mining of sand and gravel. The Oakland Circuit Court, Robert L. Templin, J., ruled that the ordinance was valid and enjoined defendants from operating their business until they obtained a permit from the township. Defendants appeal. The issues on appeal are whether the standards set forth in the subject ordinance for the issuance of permits constitute an unlawful delegation of legislative power to the township zoning board of appeals, which is authorized to issue the permits, and whether the requirements for an application for a permit are reasonable regulations as to the defendants, who are now authorized to operate under a nonconforming use, or are invalidly confiscatory as to the defendants. *Held:*

1. That portion of the ordinance which authorizes the board to grant a permit only if there would be no injury to the public health, safety and welfare is unconstitutional because it affords insufficient guides for the board in exercising its discretion.

2. A portion of the ordinance which precludes issuance of a permit where it would create an obstacle to the implementation of the township's zoning ordinance and master plan is an invalid attempt to zone property according to a master plan.

3. Language in the ordinance allowing the board to impose

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning § 60 *et seq.*
[2] 82 Am Jur 2d, Zoning and Planning §§ 66–68, 178 *et seq.,* 221.
[3, 4] 82 Am Jur 2d, Zoning and Planning §§ 72–74, 288.
[5] 82 Am Jur 2d, Zoning and Planning §§ 242, 288.
[6] 16 Am Jur 2d, Constitutional Law § 181.
  73 Am Jur 2d, Statutes § 383.
[7] 82 Am Jur 2d, Zoning and Planning § 203.

additional requirements for obtaining a permit based upon "necessity" is improperly legislative, not administrative, in nature.

4. The trial court was clearly in error when it found that soil borings were not required to meet the conditions imposed for applying for a permit where there was uncontroverted testimony that such borings were in fact necessary. Because the borings are necessary and are extremely costly, the application of the ordinance as to the defendants who have a valid nonconforming use is confiscatory.

Remanded.

1. CONSTITUTIONAL LAW—ORDINANCES—PUBLIC HEALTH, SAFETY AND WELFARE—PERMITS—LOCAL BOARD'S DISCRETION.

A portion of an ordinance regulating the removal of topsoil, subsoil, sand, gravel and other materials which provides for the authorization by a Board of Appeals of a permit to mine sand and gravel only if it will not be injurious to the public health, safety and welfare is unconstitutional because such broad statements afford no sufficient guide for the local board in the exercise of its discretion (Orion Twp Ordinance No. 40, § 2D[1]).

2. STATUTES—CONSTRUCTION—ORDINANCES—ZONING—NONCONFORM-ING USE.

An ordinance should be construed, if possible, in such a way as to render it valid, not invalid, as conferring administrative, not legislative power and as vesting discretionary, not arbitrary, authority; a reference in a township ordinance regulating the removal of topsoil, subsoil, sand, gravel and other materials to other "applicable" ordinances, standards and regulations is therefore construed to exclude any ordinance, standard or regulation which would operate to defeat a party's vested right of continuation of a valid nonconforming use of his property (Orion Twp Ordinance No. 40, § 2D[2]).

3. ZONING—ORDINANCES—PERMITS—INTERIM ZONING—MASTER PLAN.

A provision of a township ordinance regulating the issuance of permits to mine sand and gravel which precludes issuance of a permit where it would create an obstacle to the implementation of the township's zoning ordinance and master plan purports to incorporate zoning law into it and thereby creates the possibility of *ad hoc* interim zoning, which is impermissible where no full-scale rezoning is contemplated; the provision is an invalid attempt to zone property according to a master plan (Orion Twp Ordinance No. 40, § 2D[5]).

4. ZONING—ORDINANCES—NONCONFORMING USE—MASTER PLAN.

A provision of a township ordinance regulating the mining of sand and gravel is invalid to the extent that it seeks to require compliance with existing zoning despite the existence of a valid nonconforming use and to the extent that it seeks to restrict the use of land in conformity with the township's master plan (MCL 125.286; MSA 5.2963[16], Orion Twp Ordinance No. 40, § 2D[5]).

5. TOWNS—TOWNSHIPS—ORDINANCES—PERMITS—NECESSITY—LEGISLATIVE LANGUAGE.

Language in a township ordinance regulating the mining of sand and gravel which permits the township board of zoning appeals to impose conditions not found in the ordinance for the issuance of permits for such mining is invalid because the only guideline for imposition of additional conditions is "necessity"; such language is legislative and not administrative in nature (Orion Twp Ordinance No. 40, § 2D).

6. STATUTES—ORDINANCES—INVALID ORDINANCES—SEVERABILITY—SAVING CLAUSES.

An entire ordinance must be declared to be of no effect where a court strikes down parts of the ordinance unless the invalid sections can be severed from the rest of the ordinance; but it need not be declared of no effect in its entirety where it specifically provides a saving clause for sections not invalid.

7. TOWNS—TOWNSHIPS—PERMITS—APPEAL AND ERROR—CLEAR ERROR —ZONING—NONCONFORMING USE—ORDINANCES.

A trial court's finding that prohibitively expensive soil borings are not necessary to meet the requirements of a township ordinance for a permit to mine sand and gravel was clearly erroneous where uncontroverted testimony was presented that such borings would be necessary; requiring such expensive borings of a defendant whose sand and gravel operation is an established valid nonconforming use would be confiscatory and the ordinance is invalid as to that defendant (Orion Twp Ordinance No. 40, § 3D).

*Beier, Howlett, McConnell, Googasian & McCann,* for plaintiff.

*Milton F. Cooney,* for defendants.

Before: N. J. KAUFMAN, P. J., and D. E. HOL-
BROOK, JR. and D. F. WALSH, JJ.

N. J. KAUFMAN, P. J. Pursuant to a local ordi-
nance, plaintiff commenced this action to enjoin
defendants from carrying on their sand and gravel
business located in plaintiff township. At trial,
defendants contended that the ordinance was in-
valid. The trial court ruled that the ordinance was
valid and enjoined defendants from carrying on
the business until a permit is obtained. A judg-
ment to this effect was entered April 27, 1977.
Motions to stay the order were denied by the trial
court and this Court. Defendants appeal as of
right.

Defendants have operated their gravel business
at the present location for over 14 years. The
parcel mined by defendants is in excess of 200
acres. The area is surrounded by an airport and
farms. Plaintiff concedes that the zoning law gives
defendants a vested right to the nonconforming
use of the property as a gravel mining operation
even though the present industrial zoning of the
property would not permit the processing opera-
tions. However, plaintiff argues that the present
ordinance is regulatory and not a zoning ordi-
nance. It was admitted at trial that defendants
have not complied with the ordinance.

The ordinance in question is entitled:

"AN ORDINANCE TO REGULATE THE REMOVAL OF
TOPSOIL, SUBSOIL, SAND, GRAVEL AND OTHER MATERI-
ALS AND THE MOVING AND FILLING OF LAND."

It is divided into 13 detailed sections.

For purposes of this appeal, two major questions regarding the ordinance are presented:

(1) Do the standards that the township zoning board of appeals uses to grant or deny permit authorizations constitute an unlawful delegation of legislative power to an administrative body—particularly where a nonconforming use is involved?

(2) Are the performance standards and other requirements for application information reasonable regulation of a nonconforming use; or are they invalidly confiscatory?

As to the first question, the applicable standards are found in § 2D:

"The Board of Appeals shall authorize the issuance of a permit only if it finds that the granting of said permit will (1) not be injurious to the public health, safety and welfare of the Township and its residents, (2) there has been compliance with all the requirements and standards of this Ordinance, and the other applicable Township ordinances, standards and regulations, (3) the proposed operation will not create an unreasonable hazard, annoyance or inconvenience to the owners or occupants of nearby property, (5) and will not create any significant obstacle to the implementation of the plan for Township development as evidenced by the Zoning Ordinance and the Master Plan of the Township. The Board of Appeals may attach such conditions to the granting of the permit as it finds necessary to insure that the intent and purpose of this Ordinance is fulfilled. Any violation of a condition(s) included in the permit shall be construed as a violation of this Ordinance and shall be grounds for revoking the permit."

We hold that several of the standards listed are invalid, either because the assailed standard is not sufficiently precise or because the assailed standard is legislative rather than administrative in nature.

Examining § 2D(1) first, we note that it provides that:

"The Board of Appeals shall authorize the issuance of a permit only if it finds that the granting of said permit will (1) not be injurious to the public health, safety and welfare of the Township and its residents * * * ."

The quoted language violates the Supreme Court's holding in *Osius v City of St Clair Shores,* 344 Mich 693, 699–700; 75 NW2d 25 (1956), wherein it concluded that ordinances cannot:

"be saved by * * * broad statements as to the public health, safety, and general welfare, since such statements afford no sufficient guide for the board in the exercise of its discretion."

Therefore, we find that § 2D(1) is unconstitutional on its face. Accord, *Milford v People's Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968).

An additional problem arises from § 2D(2):

"[T]here has been compliance with all the requirements and standards of this Ordinance, and the other applicable Township ordinances, standards and regulations,".

Applied literally, this standard would effectively circumvent defendants' vested right to the continuation of their mining and gravel business as a nonconforming use. However, it is not necessary to hold this subsection unconstitutional on its face. As noted by the Supreme Court in *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976):

"if possible the statute must be construed in such a way as to 'render it valid, not invalid', as conferring 'administrative, not legislative' power and as vesting 'discretionary, not arbitrary, authority'." (Citation omitted.)

We therefore construe the term "applicable" in § 2D(2) to exclude any ordinance, standard, or regulation which would operate to defeat defendants' vested right of continuation.

Constitutional questions are also created by § 2D(5):

"[A]nd will not create any significant obstacle to the implementation of the plan for Township development as evidenced by the Zoning Ordinance and the Master Plan of the Township."

We hold § 2D(5) to be an invalid attempt to zone property according to a master plan. On its face, this standard purports to incorporate zoning law into it, and, thus, creates the possibility of *ad hoc* interim zoning, which is only permissible—where a township has a validly enacted zoning act—if full-scale rezoning is contemplated. *Lake Twp v Sytsma,* 21 Mich App 210, 214; 175 NW2d 337 (1970). Nothing in the record indicates such an intent. We note, in any event, that any rezoning would not affect defendants' nonconforming use.

Furthermore, to the extent that plaintiff, through this standard, seeks to require compliance with existing zoning despite the existence of a valid nonconforming use, the standard directly conflicts with MCL 125.286; MSA 5.2963(16).

We also note that to the extent that plaintiff seeks to restrict the use of land in conformity with its master plan, the restriction is invalid. See 2

Rathkopf, The Law of Zoning and Planning (4th ed), § 30.02, p 30-4.

Recalling our citation to *DNR v Seaman, supra,* we find that this standard cannot be construed for validity. If it is read to incorporate the restrictions on the exercise of power that must be applied to master plans and nonconforming uses, which would eliminate the standard's invalid aspects, it becomes a meaningless standard.

The most troublesome portion of § 2D, however, is not an enumerated standard but the following language:

"The Board of Appeals may attach such conditions to the granting of the permit as it finds necessary to insure that the intent and purpose of this Ordinance is fulfilled. Any violation of a condition(s) included in the permit shall be construed as a violation of this Ordinance and shall be grounds for revoking the permit."

It is redundant to read that language as permitting the board to impose conditions found elsewhere in the ordinance. Thus, the language must be read to permit the board to impose additional conditions not found in the ordinance; and, since the only guideline for imposition is "necessity", the language is inescapably legislative and not administrative in nature. The language is therefore invalid under *Osius v City of St Clair Shores, supra.*

Where a court strikes down parts of an ordinance, it must declare the entire ordinance to be of no effect unless the invalid sections can be severed from the rest of the ordinance. In this case, § 12 of the ordinance provides:

"This Ordinance and the various parts, sections and clauses thereof are hereby declared to be severable. If

any part, sentence, paragraph, section or clause is adjudged unconstitutional or invalid, it is hereby provided the remainder of the Ordinance shall not be affected thereby."

Thus, outright reversal is not mandated, and we pass to the second question presented.

The question of regulation of a nonconforming use is not an easy one to resolve because of the competing interests involved. On the one hand, the general health, safety, and welfare of the general populace would seem to demand that a nonconforming use be made to keep pace with existing technology, despite the fact that changes of that sort might result in financial outlay which might have the effect of diminishing the value of the use to some degree. On the other hand, because a nonconforming use represents a statutorily vested right, MCL 125.286; MSA 5.2963(16), regulation cannot be so onerous as to be confiscatory in nature.

Michigan courts have recognized this tension. In *Adams v Kalamazoo Ice & Fuel Co,* 245 Mich 261; 222 NW 86 (1928), plaintiffs brought suit against defendant company to enjoin the operation of the business in a residential district. The ice station building was built prior to the enactment of the zoning ordinance; thus, it was a nonconforming use.

Plaintiffs argued that the nonconforming use was, in fact, a nuisance *per accidens.* The Supreme Court noted:

"If the ice station is a nuisance by reason of method of its operation, then regulation, if adequate, and not abatement, is the remedy." 245 Mich at 264.

The Supreme Court explained:

"While the court of equity has power to abate nuisances in protection of property rights, and to conserve the enjoyment, health, comfort, and welfare of individuals, it moves with caution, deciding each case upon its particular facts, and accords protection against injury only in cases where an action at law would afford no adequate redress." 245 Mich at 265.

Almost a decade later, the Supreme Court extended its rationale to a zoning case not involving a nuisance. In *Wolverine Sign Works v City of Bloomfield Hills,* 279 Mich 205; 271 NW 823 (1937), plaintiff asked for a declaratory judgment that a zoning ordinance relating to the maintenance of existing billboards be declared unconstitutional. The Supreme Court noted:

"We do not need to set forth the several ordinances. It is sufficient to say that in effect they prohibited maintenance of the billboards without a permit and, as demonstrated by the city officials, no permit will be granted and, therefore, their continuance subjects the owner thereof to the penal provisions for violation, destroys the lease use, a property right, and incidentally takes from the owner of the land the right of such rental." 279 Mich at 207.

Significantly to this case, the Supreme Court then held:

"The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards but may not arbitrarily strike down the maintenance of erected billboards or vest such power of arbitrary action in municipal officers." 279 Mich at 208.

Declining to limit *Wolverine Sign Works* to its facts, the Supreme Court extended its holding to

trailer parks in *Richards v City of Pontiac,* 305 Mich 666; 9 NW2d 885 (1943).

The Supreme Court has also recognized the need to distinguish between prior nonconforming uses and other uses in determining the validity of regulating provisions contained in a zoning ordinance. In *Detroit Edison Co v City of Wixom,* 382 Mich 673, 690; 172 NW2d 382 (1969), the assailed ordinance was held invalid as *applied to plaintiff* because the "ordinance operates retroactively upon plaintiff's vested property rights and not *in futuro* as required by our previous decisions".

It is with that legal background that we turn to the ordinance in question in this case. An examination of the required application information and performance standards discloses only one instance where regulation would be so unreasonable as to be confiscatory in nature.

According to § 3D, an applicant must submit an application including the following information:

"An estimate by a civil engineer registered as a professional engineer in the State of Michigan or land surveyor registered as a professional surveyor in the State of Michigan as to the cubic yards of material to be removed and/or placed, and a detailed statement as to how the filling and/or removal is to be accomplished."

Testifying for defendants at trial, Mr. Thomas Handyside, a consulting civil engineer, testified:

"[I]n order to make a professional judgment of it, it would have to have quite a bit of data relative to the soil types and it would involve a significant amount of soil borings."

Questioned by the trial court as to total cost, Mr. Handyside replied:

"I would say it's going to be in excess of $100,000. Probably approaching $150,000 or $200,000 to do the detailed work that would be necessary for all those borings."

Plaintiff did not rebut Mr. Handyside's testimony. Nonetheless, the trial court ruled:

"Defendants have maintained that the ordinance is unconstitutional, that it is unreasonable, and capricious, particularly in regard to Sections 3D and E which they maintain requires that an estimate by a civil engineer be made which would entail a large boring operation, a so-called grid pattern, as testified to by Defendants' witness Mr. Handyside, a civil engineer, which would cost at least a hundred thousand dollars.

"Well, the Court doesn't read Section D of Section 3 to require such an expensive estimate being made on a yearly basis. We are, after all, talking about an annual permit, the requirements for an annual permit."

We would not dispute the trial court's finding if there was testimony that a civil engineer could make the required estimate without costly borings or other prohibitively expensive means. However, since Mr. Handyside's testimony of how a professional civil engineer would fulfill the requirements of § 3D was uncontroverted, we conclude that the trial court's finding that borings are not necessary is "clearly erroneous" under GCR 1963, 517.1. We agree with the trial court's feeling that it would be unreasonable to require expensive soil borings on an annual basis. We note that as to a nonconforming use even one set of borings would be unreasonable. But if prospective applicants cannot find a civil engineer who will make the estimate without

borings, the trial court's refusal to invalidate § 3D, in effect, prevents any applicant from getting a permit unless they get what the trial court stated that they did not need.

Therefore, we hold that, as to defendants, § 3D is confiscatory regarding a prior nonconforming use, and accordingly invalid.

Having so decided, we remand this case to the trial court with instructions that defendants be allowed to apply for a permit. The board of appeals shall apply all *valid* (as to defendants) standards contained in § 2D. Except for § 3D, defendants must file all required application information. The injunction will be dissolved upon a showing that defendants have complied with the conditions precedent to the issuance of a permit.

Because of the disposition of this case, defendants' remaining issue on appeal need not be addressed.

Remanded with instructions. We do not retain jurisdiction.