**MACDONALD ADVERTISING CO., Plaintiff,**

v.

**CITY OF PONTIAC, Defendant.**

No. 94–CV–74973–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 4, 1995.

James J. Walsh, Detroit, Michigan, for plaintiff.

Marvin R. Smith, Pontiac, Michigan, for defendant.

*OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

ROSEN, District Judge.

## I. INTRODUCTION

This Section 1983 First Amendment action is presently before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment (on liability).[1] Having reviewed the parties' briefs and supporting documents, and having heard the oral arguments of counsel at the hearing held on November 21, 1995, the Court is now prepared to rule on the subject motions. This Opinion and Order sets forth that ruling.

## II. PERTINENT FACTS

Plaintiff Macdonald Advertising Co. ("Macdonald") is engaged in the business of outdoor advertising. Macdonald erects outdoor sign structures ("billboards") on which it displays advertising messages. On September 4, 1991, Macdonald applied to the City of Pontiac's Building & Safety Engineering Division for zoning compliance and sign permits necessary to erect billboards at 19 locations situated on a right-of-way owned by the Grand Trunk Western Railroad within the City of Pontiac. The parcels of property on which Macdonald sought to construct the billboards are located either in industrial (M–1 or M–2) or commercial (C–3) zoning districts.

The City denied Macdonald's applications and advised the company that billboards could not be erected anywhere in the City without "special exception permits" issued pursuant to § 14.3 of Pontiac's Zoning Ordinance.[2]

Section 14.3 of the Pontiac Zoning Ordinance provides as follows:

---

1. Macdonald initially filed its action against the City of Pontiac on February 26, 1992. On August 31, 1993, this Court dismissed the action without prejudice to Macdonald's right to refile its Complaint after the Sixth Circuit decided *Gannett Outdoor Co. v. City of Pontiac*, Sixth Cir. Nos. 92–1598 and 92–1662.

The appellate decision in the *Gannett* case was entered on January 19, 1994. In that January 19, 1994 decision, the Sixth Circuit vacated the district court's ruling on Gannett's Section 1983 claim and remanded the case to the district court with instructions to stay the federal proceedings pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), pending the state court's resolution of the state law claims. *See Gannett Outdoor Co. v. City of Pontiac*, 16 F.3d 1219, 1994 WL 12652, 1994 U.S.App. LEXIS 1019 (6th Cir.

1994) (unpublished opinion; text available on LEXIS).

Macdonald subsequently refiled its Complaint in this action on December 12, 1994.

2. After adoption of the City zoning ordinance in 1968, billboards were initially allowed as permitted "accessory" uses in districts C–3, M–1 and M–2. (Accessory signs are signs that pertain to the business or activity conducted on the property on which the sign is erected.) In 1985, the Planning Commission took the position that, because "non-accessory" billboards (i.e., billboards relating to activities conducted elsewhere than on the particular parcel of property) are not expressly named in the zoning ordinance as a permitted use in any district, "special exception permits" were required for the construction of billboards within the City.

## SECTION 14.3 SPECIAL EXCEPTION PERMITS

Uses requiring Planning Commission Special Exception Permit are special exceptions that require some measure of individualized considered judgement [sic] and the imposing of conditions in order to make them compatible with the permitted principal uses in that Zoning District. In some instances, where so indicated in the language of this Ordinance (Article VII, Article XIV), uses requiring Planning Commission Special Exception Permit are permissible only if, in the opinion of the Planning Commission, adequate conditions exist or can be imposed that will make such uses compatible with the purposes of this Ordinance; otherwise, such uses are prohibited.

The application for a Zoning Compliance Permit is made for situations where, in Section 7.4 of the Schedule of Regulations, a specified use in a particular district requires Planning Commission Special Exception Permit, the Planning Commission shall investigate the significant factual data and make a finding as to the factual situations. The Planning Commission shall approve or reject the application for a Special Exception Permit based on the factual situation and on the general standards set forth in this Ordinance and as supplemented by standards and procedures for particular types of uses on file in the Pontiac Planning Department. The Planning Commission shall promptly consider and approve or reject an application for a Special Exception Permit within a reasonable period of time.

In granting or rejecting a Special Exception Permit, the record shall be expressed in writing or drawings as to the findings of fact and the reason for the decision and the statement of any conditions or limitations to which the Special Exception Permit is subject. In issuing a Special Exception Permit the Planning Commission shall make a finding concerning and shall prescribe appropriate conditions and safeguards to insure the following:

a. That the proposed development will not unreasonably injure the surrounding neighborhood or adversely effect the development of the surrounding neighborhood.

b. That all proposed structures, equipment, or materials shall be readily accessible for fire and police protection.

c. That the proposed use shall not cause traffic congestion or movement out of proportion to that normally prevailing in the particular district.

d. That the proposed use shall provide sufficient space for the off-street parking of all vehicles attracted by its presence and abides by the regulations set forth in this Ordinance for its particular district or use.

e. That any proposed building shall not be out of harmony with the predominant type of building in the particular district by reason of its size, character, location, or intended use.

f. That all supplementary regulations required under Article IX are satisfied.

g. That conditions indicated in Article VII are satisfied for the particular use.

[Plaintiff's Response Brief, Ex. A.] [3]

On September 17, 1991, Macdonald applied for nineteen special exception permits, as it was directed to do by the City. The City's Planning Commission considered Macdonald's request at its November 6, 1991 meeting. [See Plaintiff's Response Ex. B].

During the "public hearing" portion of the November 6, 1991 meeting, a number of citizens voiced their opposition to the construction of the billboards in the locations requested. These citizens stated their concerns that constructing the billboards would "cause a safety factor", would "distract traffic", and would create a "security problem by obstructing the view to [neighboring] building[s]". One citizen, Mr. Seay, who spoke during the public hearing was apparently a City councilman. Councilman Seay stated that he had concerns with the "messages" and whether such a large number of billboards "would proliferate the problems that the City now has." He further stated that he believed that young people were already

---

**3.** Although other sections of the Zoning Ordinance are referenced in Section 14.3, only the text of Section 14.3 has been provided to the Court.

being "proliferated with too much anti's." [See Plaintiff's Response, Ex. B.] Also read into the minutes of the November 6, 1991 meeting were several letters from businesses and property owners opposing the erection of the 19 billboards. *Id.*

After the public hearing was declared closed, the Commissioners expressed their views. Commissioner Milton stated that she had taken a training course from the Michigan Planning Association at which it was demonstrated how billboards cause people not to see traffic lights and how traffic is affected by them. She also stated that she believed that "there [is] an over proliferation of billboards advertising liquor and cigarettes in the depressed areas of the City that are giving young people the wrong message." *Id.* Commissioner Rath stated that he is not against the right of advertisers displaying their goods but "billboards are an eyesore and visual pollution is a real problem." *Id.*

At the close of the meeting, the decision was made to deny the special exception permits. According to Defendant, the Commission gave the following reasons for its denial of the permits:

(1) "the proposed uses would unreasonably injure the surrounding neighborhood and adjacent property, and adversely effect [sic] the development of the surrounding neighborhoods and/or adjacent businesses;"

(2) "the proposed uses will be out of harmony with the predominant type of buildings in the particular districts by reason of size, character, location and intended uses;"

(3) "the locations of the proposed Billboards on said sites will create undesirable proliferation of Billboards within the City and the surrounding area in which they are located and only add to the already existing visual pollution that exists in the area they are proposed to be located;" and

(4) the "conditions indicated in article VII are not satisfied for the proposed uses." [See Defendant's Brief, pp. 2–3.][4]

Macdonald subsequently appealed the Planning Commission's denial of its special exception permit applications to the City of Pontiac Zoning Board of Appeals (the "ZBA"). [See Plaintiff's Summary Judgment Motion, Ex. B.][5] The ZBA apparently affirmed the Planning Commission's decisions because Macdonald subsequently filed actions in both state and federal court seeking to overturn the City's decision on its permit applications.

In its Complaint in this action, Macdonald seeks damages under 42 U.S.C. § 1983 for deprivation of its First Amendment right to freedom of speech. Macdonald contends that Section 14.3 of the City of Pontiac's Zoning Ordinance is constitutionally invalid, both facially and as applied, because it imposes a licensing requirement in order to engage in protected free speech activities without providing specific criteria for the issuance of the needed permits, and allows the Planning Commission to exercise its judgment and discretion without the guidance of any precise standards.

The parties now have each moved for summary judgment on the issue of constitutional validity/invalidity of Section 14.3. Defendant contends that its Special Exception Permit requirements pass constitutional muster because they include standards to be considered by the Planning Commission as enumerated in ¶¶ (a)-(g) of § 14.3. Plaintiff contends that the "standards" relied upon by Defendant have nothing to do with billboards, and points to the discretionary language in the first paragraph of § 14.3.

## III. *DISCUSSION*

### A. *STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT*

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogato-

---

4. Defendant has not provided the Court with any evidence at all concerning this matter. The only exhibits which have been submitted have been provided by Plaintiff. However, as noted *supra*, the pages of the minutes which logically would contain the reasons for the Commissions decision have not been provided by either party.

5. As with the other exhibits provided by Plaintiff, the Court has only been provided with two pages, pages 1 and 4, of the Zoning Board of Appeals decision. The substance of the ZBA's decision has been omitted.

ries, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[6] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

★ Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

★ The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

★ The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

★ The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

★ The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). The Court will apply the above principles in deciding the parties' motions for summary judgment in this case.

B. *SECTION 14.3 OF THE CITY OF PONTIAC'S ZONING ORDINANCE, AS APPLIED TO BILLBOARD PERMIT APPLICANTS, IS CONSTITUTIONALLY INVALID.*

As indicated *supra,* Macdonald Advertising contends that Section 14.3 of the City of Pontiac Zoning Ordinance is invalid under the First Amendment of the United States Constitution because it vests in the Planning Commission complete discretion to decide whether or not a special exception permit should be issued but does not provide the commissioners with any specific criteria to guide them in making their decisions.

A licensing statute which places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988).

■ Because of the potential for censorship, the Supreme Court has held that when a city institutes a permit system to engage in activities which have a close nexus to expression, to pass constitutional muster, the city "must establish neutral criteria to insure that

---

6. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure,* § 2727, at 33 (1993 Supp.).

the licensing decision is not based on the content or viewpoint of the speech being considered." *Id.* at 760, 108 S.Ct. at 2146. Such neutral criteria is necessary because, left unchecked, unbridled discretion would give the licensing official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers. *Id.,* at 758, 108 S.Ct. at 2145. *See also, Forsyth County, Georgia v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992):

> To curtail that risk [of control based on content], a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective and definite standards to guide the licensing authority. The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted.

505 U.S. at 129–33, 112 S.Ct. at 2401–02 (citations omitted).

█ Turning to the provisions in the Pontiac Zoning Ordinance governing the issuance of "Special Exception Permits", Plaintiff points to the first paragraph of Section 14.3 which provides, "Uses requiring Planning Commission Special Exception Permit are special exceptions that *require some measure of individualized considered judgment*" and that "uses requiring Special Exception Permit are permissible only if, **in the opinion of the Planning Commission,** adequate conditions exist or can be imposed that will make such uses compatible with the purposes of this Ordinance."

Defendant concedes that discretion is vested in the Planning Commission, however, it claims that definite standards are provided in ¶¶ (a)-(g) of Section 14.3 to protect against the risk of content-based decisions. As Defendant notes, these paragraphs are "drafted broadly to cover many types of uses under the [zoning] ordinance", not just billboards. Defendant contends, however, that paragraphs (a), (e) and (g) requiring that the

Commission consider compatibility of the proposed use with the existing surroundings, provide the constitutionally required standards to protect against potential infringement on freedom of speech.

The Section 14.3 "standards" relied upon by Defendant are as follows:

> In granting or rejecting a Special Exception Permit, the record shall be expressed in writing or drawings as to the findings of fact and the reason for the decision.... In issuing a Special Exception Permit, the Planning Commission shall make a finding concerning and shall prescribe appropriate conditions and safeguards to insure the following:
>
> (a) That the proposed development will not unreasonably injure the surrounding neighborhood or adversely effect [sic] the development of the surrounding neighborhood.
>
> \*      \*      \*      \*      \*      \*
>
> (e) That any proposed building shall not be out of harmony with the predominant type of building in the particular district by reason of its size, character, location, or intended use.
>
> \*      \*      \*      \*      \*      \*
>
> (g) That conditions indicated in Article VII are satisfied for the particular use.

These standards are substantially similar to the "standards" at issue in *City of Lakewood.* The Lakewood newspaper vending box ordinance, like the City of Pontiac's special exception permit ordinance, vested in the city's mayor the discretion to grant or deny a permit for the placement of a newspaper vending box and required that the mayor state the reasons for his denial or grant of the permit, subject to a number of specified terms and conditions. 486 U.S. at 768, 108 S.Ct. at 2150. The Supreme Court agreed with the Sixth Circuit's finding that, although the Lakewood ordinance limited the conditions under which the mayor could grant a permit, it contained no standards for the mayor to use when denying a permit. *Id.,* at 771, 108 S.Ct. at 2152. *See also, Plain Dealer Publishing Co. v. City of Lakewood,* 794 F.2d 1139, 1144 (6th Cir.1986).

The same is true of the City of Pontiac's Special Permit Exception ordinance. The ordinance "standards" relied upon by the City in this action come into play only when the Commission decides to issue a permit: "In issuing a Special Exception Permit, the Planning Commission shall make a finding concerning and shall prescribe appropriate conditions and safeguards to insure ... [t]hat the proposed [construction] will not unreasonably injure the surrounding neighborhood ... and [t]hat any proposed [construction] shall not be out of harmony with the predominant type of building in the particular district."

Contrary to Defendant's assertion, the ordinance provisions relied upon are not narrowly drawn, objective standards. Moreover, there is nothing in the ordinance "standards" which insures that the Commissioners' discretionary licensing decision will not be based on speech content. Therefore, the ordinance is facially invalid.

The Court's decision that the Special Exception Permit ordinance is facially invalid renders it unnecessary for the Court to address Plaintiff's alternate argument that even if not facially invalid, the ordinance is invalid as applied to Macdonald because speech content was impermissibly considered by the Planning Commission in reaching its decision. However, the Court would note that the minutes of the Planning Commission meeting at which the decision to deny Macdonald's applications for Special Exception Permits indicates that speech content may have been considered. Not only was billboard content brought to the attention of the Commission by Pontiac citizens, more importantly, the comments of the Commissioners themselves indicate that content was considered.

Commissioner Milton stated that she was concerned about Macdonald's application because she believed that "there [is] an over proliferation of billboards advertising liquor and cigarettes" and that such billboards "are giving young people the wrong message." [7] And, it was Commissioner Milton who "asked for the pleasure to offer a motion to deny" one of Macdonald's three applications.[8] As the U.S. Supreme Court stated in *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), "A city cannot restrict truthful commercial speech because the city is fearful of that information's effect on ... its recipients." 453 U.S. at 505, 101 S.Ct. at 2891.

### CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (on liability) is GRANTED and Defendant's Motion for Summary Judgment is DENIED.[9]

---

7. The Court does not today rule upon the question of whether a municipality may constitutionally by ordinance or zoning regulation, prohibit or limit tobacco or liquor billboard advertisements, but notes that at least one circuit has held that a prohibition on such advertising is permissible. *See, Anheuser–Busch, Inc. v. Schmoke*, 63 F.3d 1305 (4th Cir.1995); *Penn Advertising of Baltimore, Inc. v. Mayor and City Council of Baltimore*, 63 F.3d 1318 (4th Cir.1995).

8. With respect to Macdonald's second application, Commissioner Milton reiterated that "everything she said before [with respect to the first Macdonald application considered] applies to this set of Billboards." She then tried to justify her comments as not being "censorship" by stating "It has been found to be necessary to take liquor and cigarette ads of the t.v., so [I] feel[ ] the Billboards are not really being censored." [See Plaintiff's Ex. B.]

9. Because the Court had found that the ordinance is invalid, it is unnecessary for the Court to reach the "commercial speech" issues raised in Defendant's Motion, i.e., whether the ordinance is valid under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). However, even under *Central Hudson*, the Court believes that Plaintiff would probably be entitled to summary judgment. In *Central Hudson*, the Supreme Court set out a four-part test for determining the validity of government restrictions on commercial speech:

> For commercial speech to come within [the First Amendment], it must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 565, 100 S.Ct. at 2351.

At issue in this case is the second prong of the *Central Hudson* test, i.e., "whether the govern-

The case will proceed on Plaintiff's claim for damages.

mental interest is substantial". As evidenced by the minutes of the Planning Commission, the decision to deny Macdonald's permit application was based upon "esthetics", i.e., the Commission found that the billboards would detract from the appearance of the neighborhoods. However, as a matter of Michigan law, esthetics alone is an insufficient reason for governmental use restrictions let alone restrictions on speech. *See Wol-* *verine Sign Works v. City of Bloomfield Hills,* 279 Mich. 205, 271 N.W. 823 (1937); *Detroit Edison Co. v. City of Wixom,* 382 Mich. 673, 172 N.W.2d 382 (1969). *See also, Ackerley Communications of Massachusetts v. City of Somerville,* 878 F.2d 513, 521 (1st Cir.1989) ("[W]e think it highly unlikely that aesthetics ever could be a sufficient justification for a penalty on speech...." *Id.*)